DANIEL I. CONNOLLY *vs.* ALCOHOLIC BEVERAGES CONTROL
COMMISSION
(and a companion case between the same parties).

Suffolk.   October 4, 1956. — November 6, 1956.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & CUTTER, JJ.

*Alcoholic Liquors*, License, Alcoholic beverages control commission.
   *License.   Constitutional Law*, Alcoholic beverages, Delegation of
   powers.

The provision of G. L. (Ter. Ed.) c. 138, § 15, as appearing in St. 1933,
   c. 376, § 2, as amended, that no liquor license "shall be granted except
   to an applicant approved by the [alcoholic beverages control] com-
   mission" does not make personal fitness of the applicant the sole
   matter for the commission's consideration, and no error of law nor
   abuse of discretion appeared in a disapproval by the commission,
   without any statement of its reasons, of an application for a retail
   package store license by a registered pharmacist after consideration
   of the existing patronage of the applicant's drug store by school chil-
   dren and others, the proximity of churches and schools, the adequacy
   in the public interest of a drug store license already possessed by the
   applicant, and whether on all the facts he should also be given the
   license sought.   [616–618]
G. L. (Ter. Ed.) c. 138, as appearing in St. 1933, c. 376, § 2, as amended,
   amply sets out the general policies and standards to be observed in
   administering the laws regulating the sale of alcoholic beverages, and
   § 15, as amended, in providing that no liquor license "shall be granted
   except to an applicant approved by the [alcoholic beverages control]
   commission" is not unconstitutional as an improper delegation of
   legislative power.   [618–619]

PETITIONS for a writ of certiorari and a writ of mandamus,
respectively, filed in the Superior Court on November 18,
1955.

The cases were heard by *Rome, J.*

*James C. Fay*, (*Bennett Sanderson* with him,) for the
petitioners.

*Joseph H. Elcock, Jr.*, Assistant Attorney General, for the
respondents.

CUTTER, J. Appeals from orders for judgments in two proceedings are here involved. The first is a petition for a writ of certiorari brought by a registered pharmacist, who runs a drug store in Framingham, to review and quash the proceedings by the alcoholic beverages control commission disapproving his application for a license. The second is a petition for a writ of mandamus to direct the commission to approve the application. The cases were heard together on the pleadings and a return in the certiorari proceeding containing the transcript of evidence before the commission. It was ordered that judgment be entered dismissing each petition.

The facts found by the trial court are as follows. The petitioner on February 24, 1955, applied to the selectmen of Framingham for a retail package store license under G. L. (Ter. Ed.) c. 138,[1] § 15, as amended. The selectmen approved the application. At all times here relevant, the petitioner has held a certificate of fitness under § 30, as amended, and a license to sell alcoholic beverages without a physician's prescription under §§ 29–30H, as from time to time amended. See for most recent amendment St. 1956, c. 283, § 1. On March 8, 1955, the selectmen approved the application and forwarded it to the commission. At a hearing before the commission on March 30 there were objections only from other holders of package store licenses and there was no evidence whatsoever that the petitioner was not a proper person to hold a license. The commission, without giving its reasons, disapproved the application on March 31. The selectmen requested reconsideration by the commission and a written statement of its reasons for disapproval. These requests the commission denied without giving the petitioner notice or opportunity to be heard.

The petitions were not filed until November 18, 1955, more than seven months after the disapproval of the petitioner's application. The principal reason[2] for filing the petitions was

---

[1] This chapter was completely revised by St. 1933, c. 376, § 2. References are to that revision as later amended.

[2] A further reason for the application may have been to remove doubts created by § 16C, inserted by St. 1954, c. 569, § 1. Section 16C became

obviously to obtain if possible a license for 1955, which would then put the petitioner in the position of being prima facie entitled to a license for 1956. § 16A, as appearing in St. 1937, c. 424, § 1. Although a 1955 license, if granted, would have expired on December 31, 1955, under § 23, as appearing in St. 1943, c. 542, § 12, the petitioner contends that, because of the provisions of § 16A, the proceedings are not now moot, a position which the commission disputes. See *Ward v. Selectmen of Scituate, ante,* 1, 2, and cases cited. Here the petitioner has never been the holder of a package store license and so does not come within the express terms of § 16A which purports to give the "holder of an annual license" certain preferential claim to a renewal for the succeeding licensing period. This case is distinguishable on this ground from *Piona* v. *Alcoholic Beverages Control Commission,* 332 Mass. 53, 57, where, because of possible benefits to the petitioner in that case under § 16A, the issue of restoration to the holder of a license, once held by the petitioner but improperly cancelled, was held not to be moot. In the view which the court takes of this case, however, it is not necessary to decide whether the proceedings are moot, for we think that on the merits the petitions were properly ordered to be dismissed. We leave open the question whether, under § 16A, an applicant, improperly denied a license, stands in the same position as one who has held a license, which has been improperly cancelled.

The basis for contending that the commission erred in disapproving the petitioner's application (which had already been approved by the selectmen as the local licensing authorities) is that the commission exceeded its authority under § 15, first paragraph, as appearing in St. 1935, c. 440,

---

effective on January 1, 1956. It forbids licenses on premises, like those of the petitioner, within five hundred feet of a church or school, but does not apply (see St. 1954, c. 569, § 2) to premises which were licensed for the sale of alcoholic beverages prior to the effective date of c. 569. In view of the conclusion reached by this court, it is not necessary to decide whether § 16C in any event would have barred the granting in 1956 of a license to the petitioner different in type from that which he had held previously. Certain quota problems in 1956 might also have been avoided if the petitioner had been granted a license in 1955. See § 17, as amended. See also St. 1956, c. 283, § 1.

§ 12,[1] and took into consideration factors which were not properly of concern to it. The authority of the commission is set forth simply in the sentence "No such license shall be granted except to an applicant approved by the commission." The petitioner asserts (1) that the only authority of the commission under this sentence to disapprove an application rests on the basis of the personal fitness of the applicant, and (2) that, because the commission had before it no evidence that the petitioner was unfit, the commission was under a duty to approve his application. The petitioner further suggests that the commission was bound to state its reasons for disapproval.

The commission exists under G. L. (Ter. Ed.) c. 6, § 43, inserted by St. 1933, c. 120, § 2, as amended by St. 1933, c. 375, § 1, and St. 1950, c. 785. By the first paragraph of G. L. (Ter. Ed.) c. 6, § 44, as appearing in St. 1933, c. 376, § 1, it is provided, "The commission shall have general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting and selling alcoholic beverages as defined in section one of chapter one hundred and thirty-eight and also of the quality, purity and alcoholic content thereof." By G. L. (Ter. Ed.) c. 138, § 24, as appearing in St. 1943, c. 542, § 13, and as amended by St. 1952, c. 426, the commission is given broad power to clarify the provisions of c. 138 by regulations.[2] See as to comprehensive powers of the commission, *Universal Machine Co.* v. *Alcoholic Beverages Control Commission,* 301 Mass. 40, 44. See also *Sullivan* v. *Crowley,* 307 Mass. 189, 190–191. General Laws (Ter. Ed.) c. 138, § 23, as amended, emphasizes the fact that licenses are a special privilege subject to public regulation and control (see *Jubinville* v. *Jubinville,*

---

[1] Section 15 as so appearing reads in part: "The local licensing authorities in any city or town which votes to authorize the granting of licenses for the sale of all alcoholic beverages . . . may grant licenses for the sale at retail of such alcoholic beverages . . . not to be drunk on the premises, to applicants therefor who are citizens and residents of the commonwealth . . . . No such license shall be granted except to an applicant approved by the commission. . . ."

[2] No one of these regulations appears in the present record and consequently they need not be considered. See *Commonwealth* v. *Crane,* 158 Mass. 218; *Finlay* v. *Eastern Racing Association, Inc.* 308 Mass. 20, 26–28.

313 Mass. 103, 106) and gives to the commission comprehensive powers of supervision over licensees, including power to revoke and modify licenses.

The legislative history of G. L. (Ter. Ed.) c. 6, § 43, and of G. L. (Ter. Ed.) c. 138, as amended, clearly shows that the powers of the commission were not intended to be perfunctory or limited. In the very respect here in issue, the approval or disapproval of the action of local licensing authorities, that history[1] indicates that the commission was charged with important responsibilities and that it was not to be narrowly restricted in performing them.

It is not necessary to decide in this case what are the precise limits of the authority of the commission in considering the approval or disapproval of the acts of local licensing boards under § 15, but we do hold that such authority at least extends to considering such matters (shown by the record to have been discussed by the commission at its hearing on the application) as (1) the existing patronage by school children and others of the petitioner's drug store; (2) the proximity of churches and schools; (3) the adequacy

---

[1] Senate Document No. 494 of 1933, the report of the special recess committee appointed to consider legislation to take effect upon the repeal of the Eighteenth Amendment to the Constitution of the United States, was the basis of most of the present G. L. c. 138. In summarizing its views (page 12) it listed as the first important recommendation: "Absolute supervision and control by a State commission created and continued with a minimum of political interference." At page 13, it says that the commission is to have "power of review and final approval over the licenses issued by local licensing boards." See also Governor Ely's message recommending essentially adoption of the special recess committee's report. Senate Document No. 495 of 1933, page 2. In this he said, "It also seems reasonable that local licensing boards should grant local licenses in the first instance, *subject to approval of the State Board*" (emphasis supplied).

The bill recommended by the special recess committee (Senate Document No. 494, at page 40), in § 15 of a proposed new c. 138, suggested that the words here under scrutiny read, "No such license shall be granted except to an applicant approved by the commission after investigation except as provided in section twenty-three" (which exempted the first applications to be made under the new law). The law was enacted in this form (St. 1933, c. 376, § 2, at page 754). The words "after investigation except as provided in section twenty-three" disappeared as a result of an unexplained revision of § 15 by St. 1935, c. 440, § 12.

A similar broad authority for the alcoholic beverages control commission was recommended by the special commission headed by the late Bentley W. Warren, which also studied post-"Repeal" legislation and whose report (House Document No. 1300 of 1933, page 8) was used to a considerable extent by the special recess committee.

in the public interest of the drug store license under G. L. (Ter. Ed.) c. 138, § 30A, as appearing in St. 1935, c. 440, § 26, already possessed by the petitioner; and (4) whether this, on all the facts, was a proper instance in which a registered pharmacist might also be given a license under § 15, as is permitted by G. L. (Ter. Ed.) c. 138, § 29, as appearing in St. 1935, c. 440, § 25. See discussion in *Webster* v. *Alcoholic Beverages Control Commission,* 295 Mass. 572, 575–576; *Coyne* v. *Alcoholic Beverages Control Commission,* 312 Mass. 224, 228–229. On all of these matters, we think the commission cannot be said to have acted unreasonably in the light of the evidence before it, giving due weight to its specialized knowledge of the problems affecting the regulation of the sale of alcoholic beverages.[1]

The petitioner suggests that the provision of § 15 limiting licenses to applicants to those "approved by the commission" is an unconstitutional delegation of legislative authority to the commission, without setting up adequate standards for the commission's action, if the provision is to be construed broadly enough to permit the disapproval of the applicant's license in the present case. See *Commonwealth* v. *Diaz,* 326 Mass. 525, 527–528. There is no merit to this contention. The general policies and standards to be observed in administering the laws regulating the sale of alcoholic beverages are amply set out in various sections of c. 138 and especially in § 17 dealing with numbers of licenses and § 23 setting forth the characteristics of the licenses to

---

[1] The commission was not obliged to state its reasons for its action in disapproving the application, however desirable such statements by administrative boards may be. See Davis, Administrative Law (1951 ed.), § 167. Where the Legislature in G. L. (Ter. Ed.) c. 138 has intended that the commission shall state its reasons for disapproving action of local licensing authorities, it has explicitly required such a statement, as, for example, in § 67 as most recently amended by St. 1955, c. 461, relating to appeals from local decisions. Compare *Williams* v. *Pittsfield Lime & Stone Co.* 258 Mass. 65, 71 (trial judge not required to give reasons for rulings). The provisions of the State administrative procedure act found in G. L. (Ter. Ed.) c. 30A, § 14 (8), inserted by St. 1954, c. 681, § 1, are not here applicable, for that act did not become effective by its terms (see St. 1954, c. 681, § 22) until July 1, 1955, three months after the decision of the commission here involved. It, therefore, is unnecessary to decide whether the proceedings before the commission were "adjudicatory proceedings" within the meaning of the term as used in the State administrative procedure act.

be granted. The general policy is perhaps best indicated by the first paragraph of § 23, as appearing in St. 1943, c. 542, § 12, reading, "The terms licenses and permits, wherever employed as substantives in this chapter, are used in their technical sense of a license or permit, transferable only as provided in this chapter, and revocable at pleasure and without any assignment of reasons therefor by the granting authority, the commonwealth, acting through the same officers or agents and under the same delegated authority, as authorized the issue of such licenses or permits. The provisions for the issue of licenses and permits hereunder imply no intention to create rights generally for persons to engage or continue in the transaction of the business authorized by the licenses or permits respectively, but are enacted with a view only to meet the reasonable demand of the public for pure alcoholic beverages and, to that end, to provide, in the opinion of the licensing authorities, an adequate number of places at which the public may obtain, in the manner and for the kind of use indicated, the different sorts of beverages for the sale of which provision is made."

The powers of the States in dealing with the regulation of the sale of intoxicating liquors are very broad. What they may wholly prohibit, they may permit only on terms and conditions prescribed by the Legislature. *Supreme Malt Products Co. Inc.* v. *Alcoholic Beverages Control Commission, ante,* 59, 61. *Ziffrin, Inc.* v. *Reeves,* 308 U. S. 132, 138–139. *Carter* v. *Virginia,* 321 U. S. 131, 137–143. In dealing with a trade, which, because of its great potential evils, can be wholly prohibited, a wide power is given to the Legislature with respect to the delegation of discretionary powers. Particularly in view of the extent to which the policy of c. 138, and the basis for action under it, have been specified, as already indicated, there is no invalid delegation of authority to the commission in leaving to it, as was done in § 15, the power to approve or disapprove applicants for licenses. See *Butler* v. *East Bridgewater,* 330 Mass. 33, 36–37.

Since no error of substantive law by the commission is apparent on the record, the writ of certiorari was properly

ordered to be dismissed. G. L. (Ter. Ed.) c. 249, § 4, as amended. See *H. Hollander Co. Inc.* v. *Alcoholic Beverages Control Commission,* 327 Mass. 390, 393; *Gifford* v. *Commissioner of Public Health,* 328 Mass. 608, 619. Similarly the record does not show that the petitioner is entitled to any relief by mandamus since the commission, acting within the limits of its discretion, could disapprove the license. That petition also was properly ordered to be dismissed. See G. L. (Ter. Ed.) c. 249, § 5, as amended.

*Orders for judgment affirmed.*