HUB NAUTICAL SUPPLY CO., INC. *vs.* ALCOHOLIC
BEVERAGES CONTROL COMMISSION & another.

Suffolk.    March 12, 1981. — May 5, 1981.

Present: HALE, C.J., BROWN, & KASS, JJ.

*Alcoholic Liquors,* License, Alcoholic Beverages Control Commission.
   *License.*

It was within the power of the Alcoholic Beverages Control Commission
   to disapprove a license issued by a local licensing board on the ground
   that the conditions imposed on the license were beyond the scope of
   authority of the local board.  [771-773]
Restrictions imposed on a license for the retail sale of wine and malt bev-
   erages which would have permitted only bulk sales to ships were
   beyond the scope of authority of a local licensing board.  [773-774]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 5, 1979.

The case was heard by *Lynch,* J., on motion for summary
judgment.

*James A. Aloisi, Jr.,* Assistant Attorney General, for Alco-
holic Beverages Control Commission.

*Howard P. Speicher,* Assistant Corporation Counsel, for
Licensing Board for the city of Boston.

*Herbert S. Lerman* for the plaintiff.

HALE, C.J.  The plaintiff (Hub) is a Massachusetts corpo-
ration engaged in the business of ship chandlery, the outfit-
ting and provisioning of vessels, specifically those using
the port of Boston.  Its charter empowers it to sell foods
and all kinds of beverages.  Hub applied to the licensing
board for the city of Boston (board) for a license to sell wine
and malt beverages at retail pursuant to the provisions of
G. L. c. 138, § 15.  After a hearing the board voted to issue
Hub such a license subject to the following conditions:
(1)  that Hub not sell wine or malt beverages in small quan-

tities to a pedestrian clientele; (2) that Hub not solicit a pedestrian clientele, and (3) that Hub only sell in bulk to ships. The action of the board on this license was then submitted to the Alcoholic Beverages Control Commission (commission) which disapproved it on the principle that a license so restricted "would be a direct contradiction of the provisions of the Liquor Control Act." The commission specifically stated that it had no objection to Hub's "being granted a section 15 license, subject to reasonable rules and regulations" but further stated that it was "of the opinion that the conditions imposed on this application are beyond the scope of authority of the local board." Hub then brought a complaint under G. L. c. 231A[1] against the commission and the board seeking a declaration of the extent of the board's powers to impose restrictions on the licenses issued pursuant to G. L. c. 138, § 15. Hub also sought an order directing the commission to approve the license the board had voted to issue to it. The case was submitted to the Superior Court on a stipulation of facts. The commission moved for summary judgment in its favor, but a judgment was entered which declared that it was within the board's power to impose the conditions and, further, that in disapproving the license for the reasons stated, the Commission had exceeded its authority. The judgment also ordered the commission to approve the license to Hub, subject to the conditions imposed by the board. The commission has appealed.

In ordering the judgment the Superior Court judge ruled that the commission "went beyond the scope of its lawful authority," that "the Commission's powers of review under § 15 are limited to reviewing the applicant, and that, in disapproving Hub's application for the reason stated, it overstepped those statutory limits." We do not agree that the language in G. L. c. 138, § 15 ("No such license shall be

---

[1] The parties have not questioned whether the issues in this case were appropriately raised under G. L. c. 231A. See *Samel* v. *Pittsfield Licensing Bd.*, 377 Mass. 908 (1979).

granted except to an applicant approved by the commission"), limits the commission's powers with respect to the issuance of a license under § 15 solely to the approval of the applicant. In *Connolly* v. *Alcoholic Beverages Control Commn.*, 334 Mass. 613 (1956), the Supreme Judicial Court reviewed the propriety of the commission's disapproval, without a statement of reason, of an application for a § 15 license which had been approved by the local licensing authority. The applicant there was a registered pharmacist who held a certificate of fitness issued by the board of registration in pharmacy under G. L. c. 138, § 30, and was licensed to sell alcoholic beverages under G. L. c. 138, §§ 29-30H, as then in effect. As there was no other evidence before the commission that the applicant was not a proper person to hold a license, it was unlikely that the commission's disapproval was based on a disapproval of the applicant. The applicant's contention before the court was substantially the same as that of Hub in the present case; namely, "that the commission exceeded its authority under [the first paragraph of] § 15 . . . and took into consideration factors which were not properly of concern to it." *Id.* at 615-616. The court examined the provisions of G. L. c. 6, §§ 43 and 44,[2] and the provisions of G. L. c. 138, §§ 23 and 24, as then in effect, and concluded that the commission is given "comprehensive powers of supervision over licensees, including power to revoke and modify licenses." *Id.* at 617. The court stated that the legislative history of G. L. c. 6, § 43, and of G. L. c. 138 showed that "the powers of the commission were not intended to be perfunctory or limited. In the very respect here in issue, the approval or disapproval of the action of local licensing author-

---

[2] Section 43, as from time to time amended, provides for the establishment of an Alcoholic Beverages Control Commission, and § 44 defines its powers and duties. The first paragraph of § 44 provides: "The commission shall have general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting and selling alcoholic beverages as defined in section one of chapter one hundred and thirty-eight and also of the quality, purity and alcoholic content thereof."

ities, that history indicates that the commission was charged with important responsibilities and that it was not to be narrowly restricted in performing them." *Ibid.* (footnote omitted). The court then said, as to the case before it, "It is not necessary to decide . . . what are the precise limits of the authority of the commission in considering the approval or disapproval of the acts of local licensing boards under § 15, but we do hold that such authority at least extends to considering such matters (shown by the record to have been discussed by the commission at its hearing on the application) as (1) the existing patronage by school children and others of the petitioner's drug store; (2) the proximity of churches and schools; (3) the adequacy in the public interest of the drug store license under G. L. (Ter. Ed.) c. 138, § 30A, as appearing in St. 1935, c. 440, § 26, already possessed by the petitioner; and (4) whether this, on all the facts, was a proper instance in which a registered pharmacist might also be given a license under § 15, as is permitted by G. L. (Ter. Ed.) c. 138, § 29, as appearing in St. 1935, c. 440, § 25. See discussion in *Webster* v. *Alcoholic Beverages Control Commission,* 295 Mass. 572, 575-576 [1936] . . . ." *Id.* at 617-618.

It is clear from the holding in the *Connolly* case that the commission is not limited to consideration of the applicant alone. While that case does not fix the outer limits of the commission's power, we are of the opinion that it does not stretch the power of the commission recognized in *Connolly* for us to decide, as we do, that it includes the power to determine whether the conditions on the license as approved by the board were within the board's authority. See *Selectmen of Barnstable* v. *Alcoholic Beverages Control Commn.,* 373 Mass. 708, 714-718 (1977). Compare *Boston Licensing Bd.* v. *Alcoholic Beverages Control Commn.,* 367 Mass. 788, 794-796 (1975).

We turn now to the question whether the commission was correct in determining that the board acted beyond the

scope of its authority by imposing the conditions limiting the license to the sale of beer and wine in bulk to ships.[3]

While a license under G. L. c. 138, § 15, would permit a licensee to sell alcoholic beverages to ships, such a license is, as the board recognized and the commission noted, a license which provides for sales of alcoholic beverages to all members of the public who are of sufficient age and not disqualified under c. 138, § 69, and who would ordinarily buy such beverages in small quantities. The conditions imposed by the board narrow that broad range of permitted purchasers so severely that for all practical purposes the board's action creates an entirely new type or class of license, one for servicing only ships.[4] It is the function of the Legislature and not the local licensing authorities to define the sales allowed under a license issued pursuant to G. L. c. 138 (see *M.H. Gordon & Son, Inc.* v. *Alcoholic Beverages Control Commn.*, 371 Mass. 584, 588-589 [1976]), and the board's attempt to do so was beyond its power. The commission thus acted reasonably in disapproving the license.

The judgment is reversed, and a new judgment is to be entered declaring that the conditions imposed by the board on Hub's license were beyond its power and that it was within the power of the commission to disapprove the license.

*So ordered.*

---

[3] We note from the commission's notice of disapproval which is referred to in the "stipulation of facts" that Hub's manager informed the commission that "sales will be from 10 to 1,000 cases of beer to ocean going oil tankers and freighters to be consumed beyond the three mile limit."

[4] We note that a limited license (compared to that provided for in G. L. c. 138, § 12, which provides for the sale of alcoholic beverages to be consumed on premises) is authorized by § 13, pursuant to which owners or operators of passenger-carrying vessels may be licensed to sell alcoholic beverages on such vessels.