VICTORIA, INC. *vs.* ALCOHOLIC BEVERAGES CONTROL
COMMISSION.

No. 91-P-117.

Worcester. February 20, 1992. - November 10, 1992.

Present: ARMSTRONG, PERRETTA, & GREENBERG, JJ.

*Statute*, Acceptance, Construction. *License. Alcoholic Liquors*, License, Local licensing authority. *Administrative Law*, Agency's interpretation of statute.

In an action in the Superior Court for judicial review of a decision of the Alcoholic Beverages Control Commission denying plaintiff's application for a seasonal pouring license under G. L. c. 138, § 17, on the ground that the local licensing board had not filed with the commission an estimate of any temporary increase in the local resident population, the judge correctly concluded that the commission's decision was based upon an error of law, where such an estimate was not required, population being only one of many factors which may be taken into consideration in the ultimate determination of local public need, and that the commission could not withhold its approval on that basis alone; moreover, this court, in ordering the matter remanded to the commission for further proceedings, stated that the commission may, in its consideration whether the local public interest warrants the approval of the issuance of a seasonal license, consider, in addition to population, those factors which in its specialized knowledge it reasonably determines relevant to the issue of the plaintiff's application. [511-514]

CIVIL ACTION commenced in the Superior Court Department on September 10, 1990.

The case was heard by *Herbert F. Travers, Jr.*, J.

*Steven K. Berenson*, Assistant Attorney General, for the defendant.

*Evan T. Lawson* (*John J. L. Matson* with him) for the plaintiff.

PERRETTA, J. This appeal concerns the commission's denial of the plaintiff's application for a seasonal pouring license (for sale of alcoholic beverages for consumption on the prem-

ises) under G. L. c. 138, § 17. On the plaintiff's application for judicial review, a Superior Court judge determined that the commission's decision was based upon an erroneous reading of the statute. He allowed the plaintiff's motion for summary judgment and ordered that the commission approve the plaintiff's application. We agree that the commission's decision was based upon an error of law but remand the matter for further consideration of the plaintiff's application in light of our conclusion.

1. *Pertinent statutory provisions.* Whether a liquor licensee can sell alcoholic beverages for consumption on or off the premises where the sale occurs depends upon the nature of the license granted under G. L. c. 138. Section 12 speaks to on-premises, or pouring, licenses, and § 15 concerns off-premises, or retail sales, licenses. The number of each of these two types of year-round licenses that local licensing authorities (boards) may issue is regulated by § 17, which sets up a quota system based upon population. Because an area's population can increase at certain times of the year, provision is made in § 17 for additional on-premises and off-premises licenses during seasons of temporary population increases. Up until 1970, the number of seasonal on-premises and off-premises licenses which could be granted by boards was also based upon population. Each year the boards were required, as of a date dependent upon the season in issue, to make an estimate of any increase in the resident population as of a specified time.

In 1970, numerical limits based on temporary population increases were lifted from seasonal pouring licenses. Section 17 was amended by St. 1970, c. 453, § 2, to provide, in the fifth paragraph: "[T]he local licensing authorities of any city or town . . . may grant, in addition to and irrespective of any limitation of the number of licenses contained in this section, seasonal licenses under section twelve . . . to the amount or number that such authorities deem to be in the

public interst."[1] Population-based quotas for both types of year-round licenses and for seasonal off-premises licenses were left undisturbed by the 1970 amendment.

An emergency act was passed on July 12, 1978. Declaring it necessary "to provide forthwith for the more equitable distribution of certain alcoholic beverage licenses in resort areas of the commonwealth," the Legislature added a local enabling statute, § 17A, to c. 138. The original version of § 17A bears no resemblance to its present form. Section 17A, as inserted by St. 1978, c. 377, § 2, provided: "The local licensing authority of a city or town which granted seasonal licenses under section twelve prior to January the first, nineteen hundred and seventy-eight, and which accepts this section . . . is hereby authorized to grant, in addition to, and irrespective of any limitation of number of licenses contained in section seventeen, but subject to all other provisions of this chapter, additional licenses under section twelve."

By accepting this provision, a city or town which had granted seasonal pouring licenses under the fifth paragraph of § 17 could now approve year-round pouring licenses in a greater number than that established with population-based quotas. Cities or towns which did not accept § 17A remained limited, under § 17, to that number of year-round pouring licenses determined by population-based quotas and to that number of seasonal pouring licenses deemed in the public interest by the local board.

Section 17A was amended to its present form by St. 1984, c. 491, § 2. It presently reads: "In any city or town which accepts the provisions of this section, a local licensing authority which granted seasonal all alcoholic beverage . . . licenses as set forth in section twelve, on or before June thirtieth, nineteen hundred and eighty-four, is hereby authorized to grant, in addition to, the number of licenses which may be issued pursuant to section seventeen, but sub-

---

[1]There are specific and different provisions for Boston, Franklin County, and Berkshire County which are here inapplicable. We are concerned with the statute as it pertains to Westborough in Worcester County.

ject to all other provisions of this chapter, additional all alcoholic beverage licenses at a rate of one such all alcoholic beverage license per year; provided, however, that said additional licenses shall be granted only to holders of said seasonal licenses; provided, further, that the holder of said seasonal license surrenders such license; and provided, further, that the total number of seasonal licenses that the local licensing authority may issue pursuant to said section seventeen shall be reduced by one for each new license issued."[2] Those cities and towns which had accepted § 17A prior to January 1, 1985, were not subject to the terms of the 1984 amendment.[3] See *Chief of the Fire Dept. of Lynn* v. *Allard*, 30 Mass. App. Ct. 128, 130 (1991), and cases therein cited.

2. *The plaintiff's application.* During 1983 and prior years, Westborough's board approved one or more seasonal pouring licenses on the basis of estimates of temporary increases in its local population. In 1985, Westborough accepted § 17A in its amended present form. Thereafter, outstanding seasonal licenses were either converted to year-round licenses or were terminated so that, as of the time of the plaintiff's application in April, 1990, there were no seasonal licenses in Westborough.

In approving the plaintiff's application for a seasonal pouring license, the board had not made an estimate of any temporary increase in population for 1990. Although the commission recognized in its decision that § 17 "leaves the number of seasonal pouring licenses to be issued to local board discretion," it concluded that the discretionary deter-

---

[2]An identical provision for seasonal § 15, off-premises, licenses was also added by St. 1984, c. 491, § 2. See G. L. c. 138, § 17B.

[3]Section 17C, inserted by St. 1984, c. 491, § 3, reads: "Any city or town, which has accepted the provisions of section seventeen A of chapter one hundred and thirty-eight of the General Laws, as appearing in section two of chapter three hundred and seventy-seven of the acts of nineteen hundred and seventy-eight, prior to January first, nineteen hundred and eighty-five, is hereby authorized to grant, in addition to and irrespective of any limitations of the number of licenses contained in section seventeen, additional licenses under section twelve but subject to all other provisions of this chapter."

mination of local public interest "must be based on a good faith determination of seasonal population increase."

The commission denied the plaintiff's application for the sole reason that the board had not made, "prior to March 1, . . . an estimate of the temporary increase in the resident population (as of July 10 following) warranting issuance of one or more additional seasonal licenses." The March/July dates specified by the commission in its decision are identical to those required only for seasonal off-premises licenses by the fifth paragraph of § 17.

3. *Discussion.* It is the commission's argument that, without population estimates, local boards have no standard by which to determine the local "public interest." The commission claims that its requirement for such estimates is consistent with the entire statutory licensing scheme and that its interpretation of § 17 is entitled to deference. By its decision on the plaintiff's application, the commission essentially has written back into § 17 that which the Legislature, by the 1970 amendment, chose to repeal, that is, population-based limits on seasonal pouring licenses. However, "[i]t is a well settled rule, that when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled. To hold otherwise would be to impute to the legislature gross carelessness or ignorance; which is altogether inadmissible." *Brockton Edison Co.* v. *Commissioner of Corps. & Taxn.,* 319 Mass. 406, 411 (1946), quoting from *Ellis* v. *Paige,* 1 Pick. 43, 45 (1823).

As justification for reviewing the requirement for population estimates, the commission relies upon *Chelmsford Trailer Park, Inc.* v. *Chelmsford,* 393 Mass. 186, 192-193 (1984), for the proposition that the term "public interest" is so meaningless as to require the commission's interpretation which, in turn, is entitled to deference. See *Howard Johnson Co.* v. *Alcoholic Bevs. Control Commn.,* 24 Mass. App. Ct. 487, 490-491 (1987), citing *Cleary* v. *Cardullo's, Inc.,* 347 Mass. 337, 343-344 (1964). An agency's interpretation of a statute, however, is not entitled to substantial deference

where it is contrary to the plain and unambiguous terms of the legislative provision. See *Bolster* v. *Commissioner of Corps. & Taxn.*, 319 Mass. 81, 86 (1946); *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 441 n.22 (1972).

We do not think that it reasonably can be argued that the Legislature did not intend, in 1970, to lift population-based quotas on seasonal pouring licenses. The Legislature not only specifically left the estimates and their due dates in place for seasonal § 15, off-premises, licenses, it also used emphatic language, "in addition to and irrespective of any limitation of the number of licenses contained in this section," in substituting local "public interest" for quotas in respect to seasonal pouring licenses. G. L. c. 138, § 17, fifth par., as appearing in St. 1970, c. 453, § 2. The commission's decision is contrary to the clear and emphatic terms of the statute.

Further, the commission's decision cannot be viewed as reasonable guidance for local boards. Although the term "public interest" might offer little assistance to a rate-setting board in arriving at rental adjustments, see *Chelmsford Trailer Park, Inc.* v. *Chelmsford*, 393 Mass. at 192-193, the same cannot be said in respect to determinations made by food and beverage licensing boards. "Whether any such licenses shall be granted and, if any, the number to be granted rest in the sound judgment of the licensing board as to the demands of the public welfare in the respective communities. The requirement of the 'public good' as the standard by which to measure the number of such licenses to be granted runs through the statutes on this subject for more than a century. This is a valid police regulation. . . . It is sufficiently definite to be comprehended by persons of common understanding." *Liggett Drug Co.* v. *License Commrs. of N. Adams*, 296 Mass. 41, 50 (1936) (citations omitted). See *Great Atl. & Pac. Tea Co.* v. *License Commrs. of Springfield*, 387 Mass. 833, 839 & n.10 (1983).

Local boards are capable of considering, in the first instance, those same factors which guide the commission in the reasonable exercise of its reviewing authority. As pointed out

in *Connolly* v. *Alcoholic Bevs. Control Commn.*, 334 Mass. 613, 617-618 (1956), population is but one of many relevant factors to be considered by the commission in reviewing a local licensing decision. Further, we do not agree that unless § 17 is construed as requiring that seasonal pouring licenses be based upon estimates of temporary population increases, it will conflict with the final proviso in § 17A, as appearing in St. 1984, c. 491, § 3. In interpreting § 17A, we apply those rules of statutory construction discussed in *Commonwealth* v. *Galvin*, 388 Mass. 326, 328-329 (1983).

As earlier noted, § 17A was added to the licensing scheme in 1978 in order that there be an equitable distribution of pouring licenses in the resort areas of the Commonwealth. A city or town accepting that section prior to January 1, 1985, was authorized to grant year-round pouring licenses irrespective of the numerical limits established in § 17. Those cities or towns which did not accept that provision were authorized to issue seasonal pouring licenses as needed pursuant to the fifth paragraph of § 17.

Based upon a board's responsibility to its community and the broad authority of the commission, see *Selectmen of Barnstable* v. *Alcoholic Bevs. Control Commn.*, 373 Mass. 708, 715 (1977), the Legislature reasonably could have determined that a city or town which accepted the 1978 version of § 17A would not issue additional year-round licenses while also claiming a need for more seasonal licenses under § 17 and thereby skew the distribution scheme which the Legislature intended to be more equitable than inflexible population-based quotas. This intended flexibility is also evident in the 1984 version of § 17A, approved January 9, 1985. A city or town which had not accepted the statute until after the effective date of the 1984 version, and which might have been granting year-round pouring licenses in accordance with the numerical limits set out in § 17, would have had greater need for seasonal licenses than cities or towns which had accepted the 1978 version of § 17A. The 1984 version of § 17A maintains equitable distribution by allowing cities and towns accepting the provision after its ef-

fective date to gain, as matter of right, one additional year-round license a year irrespective of the numerical limits on such licenses set out in § 17.

Because these cities or towns can gain an additional year-round license per year, balance is maintained by a proportionate reduction in the number of seasonal licenses to be issued. Consistent with the express language used throughout the statutes in lifting population-based quotas from seasonal licenses, we read the final provision in § 17A to mean that when a seasonal license is converted to a year-round license, the board is not to treat the conversion as freeing up a seasonal license for any new applicant. Rather, in determining whether a seasonal license will be issued to a new applicant, the board must take into consideration the extent to which the public interest has been met by the addition of the year-round license through conversion under § 17A.

4. *Conclusion.* Because the board had not filed with the commission an estimate of any temporary increase in the resident population of Westborough, the plaintiff's application was denied. We, however, have concluded that such estimates were not required, that population is but one of many factors which may be taken into consideration in the ultimate determination of local public need, and that the commission could not withhold its approval on that basis. However, it does not follow from our conclusion that the plaintiff is entitled to have its application approved. The matter must be remanded to the commission for further proceedings on the plaintiff's application. In determining whether the local public interest warrants the approval of the issuance of the seasonal license, the commission may consider, in addition to population, those factors which in its specialized knowledge it reasonably determines relevant to the issue of the plaintiff's application.

Accordingly, the judgment is vacated and the matter is remanded to the Superior Court for the entry of a new judgment setting aside the commission's decision and remanding the case to the commission for a new hearing to consider the

plaintiff's application consistent with the principles enunciated in this opinion.

*So ordered.*