Ballarin, Inc.[1] *vs*. Licensing Board of Boston.

No. 98-P-1035.

Suffolk. January 18, 2000. - June 27, 2000.

Present: Perretta, Kass, & Lenk, JJ.

*Practice, Civil,* Relief in the nature of certiorari. *Boston Licensing Board. Alcoholic Liquors,* License, Alcoholic Beverages Control Commission, Local licensing authority. *License.*

In an action in the nature of certiorari to review a decision of a licensing board denying an application for an all-alcoholic beverages license, the judge correctly concluded, on the record of the proceedings below, that the board's action was arbitrary and capricious [510-513], and the judge correctly, in the circumstances, ordered the board to issue the license applied for [513].

CIVIL ACTION commenced in the Superior Court Department on August 21, 1996.

The case was heard by *Patrick J. King*, J.

*Kathleen Phelan McNally* for the defendant.

*Evan T. Lawson* for the plaintiff.

KASS, J. For some diners, consuming an appetizer of duck liver pâté, rolled in pistachio, and served with lingonberry coulis and garlic pita points, followed by an entrée of venison au poivre, finished with a dessert of chestnut mousse gateau with apricot glacé, is still more rapturous if preceded by a dry martini or ended with a cognac. To satisfy that want, Ballarin, Inc., which operates The Hungry I restaurant (Hungry I) at 71½ Charles Street at the foot of Beacon Hill in Boston, applied in 1995 to the licensing board for the city of Boston (licensing board or board) for a seven-day all-alcoholic beverages license. That application the licensing board denied. On review in the nature of certiorari (G. L. c. 249, § 4), a judge of the Superior

---

[1] Doing business as The Hungry I (an abbreviation of The Hungry Intellectual).

Court determined that the decision of the licensing board had been arbitrary and capricious and ordered the board to issue an all-alcoholic beverages license to Hungry I. From that judgment the licensing board appeals. We affirm.

1. *Facts.* As reflected in the record made at the board proceedings, these are the salient facts laid before the Superior Court judge. Hungry I has been in business at the same location since 1981 and the following year obtained a beer and wine license. The restaurant seats forty-nine guests and serves a cuisine of some elegance. It has enjoyed considerable success. One newspaper food critic described Hungry I as "small and discreet, a place to rendezvous with friends, to take your parents, to celebrate an anniversary in the same spot you courted." The restaurant does not have a bar and agreed, as a condition of its all-alcoholic beverages license, not to install one. There is a service bar from which waiters and waitresses can pick up drinks.

At what was to be a first hearing on Hungry I's application before the licensing board, proponents and opponents of the award of an all-alcoholic beverages license made known their views, by speech and writing. Among Hungry I's adherents were some abutters and many patrons, one of whom touted the salubrious tendency of a Bloody Mary to increase levels of good cholesterol. Those opposed mustered all the political artillery — the Beacon Hill Civic Association and elected public officials. The principal argument advanced against granting the application was "opening of the floodgates"; i.e., were Hungry I to receive an all-alcoholic beverages license, how could the licensing board say no to others? The neighborhood would go down the drain.

The licensing board denied Hungry I's application on November 2, 1995. In its statement of reasons, published February 14, 1996, the board expressed sympathy "with a good operator" but emphasized the strong community opposition to granting the license. Hungry I appealed to the Alcoholic Beverages Control Commission (ABCC). G. L. c. 138, § 67. After hearing, that agency found that there was "no question as to the character and fitness of the applicant," and commented that "[c]oncerns about a future transfer, or potential future applications, are not a valid reason to deny the application." It remanded the matter to the licensing board for further hearing "to consider testimony in support of the application." That the ABCC thought the license

application should be granted is obvious from its decision. The licensing board so understood it, but the ABCC lacks the authority to order a local board to issue a liquor license. G. L. c. 138, § 67, third par. *Selectmen of Sudbury* v. *Alcoholic Bevs. Control Commn.*, 25 Mass. App. Ct. 470, 472 (1988).

On remand, the licensing board did not change its mind. It again denied Hungry I's application. Its determinative subsidiary finding was:

> "The Board held a hearing on July 24, 1996. There are 4 All Alcoholic Beverages licenses on Charles Street at the present time with an additional 10 Wines & Malt Beverages Licenses. The Board finds that these constitute an adequate number of places at which local residents may obtain the different sorts of beverages for which provision is made. The Board finds that there is no public need for an additional license at this location."

Thwarted a second time, Hungry I sought review in accordance with G. L. c. 249, § 4. A judge of the Superior Court considered the case on the return of the administrative record before the licensing board. The judge found that the administrative record did not support the licensing board's findings about the number of liquor licenses in the relevant neighborhood. There were two establishments on Charles Street with all-alcoholic beverages licenses, not four, and eight, not ten, holding wine and beer licenses. Counsel had stipulated to two existing all-alcoholic beverages licenses in the relevant locality as constituting the accurate number. The licensing board's decision, the judge reasoned, rested on a faulty premise. Because the board had said that four all-alcoholic beverages licenses adequately served the locality and there were only two such, granting a license to Hungry I would contribute to what the licensing board had determined was the public need. The licensing board had pronounced Hungry I a first-class restaurant. For the licensing board to have refused Hungry I the more expansive license for a reason that rested on a faulty factual premise, i.e., that the locality was oversaturated with all-alcoholic beverages licenses, the judge concluded, was arbitrary and capricious. He ordered the licensing board to issue the license applied for to implement its own judgment about the public need.

The board's response was to file a motion for reconsideration

based on a postjudgment examination of its records that "indicate[s] that three (3) All Alcoholic Beverages Licenses are in existence on Charles Street in Boston within the same zip code as the Plaintiff." That motion the judge denied on the basis of the stipulation that the number was two and that, even if the number of licenses were three rather than two, "this would not have affected the court's decision." Thereafter, the licensing board moved unsuccessfully to stay the judgment ordering issuance of the license[2] and to correct the Superior Court record. Although the Superior Court judge observed that his memory and notes were of a stipulation by board's counsel that the number of existing all-alcoholic beverages licenses on Charles Street was two, he invited a hearing, as well as additional submissions, on the question. After the judge so ordered, the licensing board filed its supplemental motion to correct the record.

When the hearing convened on December 9, 1997, the licensing board no longer pressed its earlier denial that it had stipulated to only two all-alcoholic beverages licenses on the relevant portion of Charles Street. What the board meant all along, counsel explained to the judge, was that there were four all-alcoholic beverages licenses in the "Charles Street area." Thus, in saying that there were already four all-alcoholic beverages licenses issued, the board meant to include licenses issued to Young Bin Garden, at 355 Charles Street (that restaurant, the judge observed, was in the West End and could only be entered off Blossom Street); the Hampshire House at 84 Beacon Street (the judge observed this was on the edges of the Beacon Hill and Back Bay neighborhoods); and The Charles (located on Chestnut Street). If those locations were included, together with the two concededly on Charles Street, the number of licensees would actually have swollen to five.[3]

If the board had, in its original findings, meant something other than it said, the judge ruled, it had allowed an inordinate time to elapse before changing position. "It would be manifestly unfair to the plaintiff," the judge wrote in a supplementary memorandum of decision and order, "at this late date to remand the case to the [l]icensing [b]oard to allow the [b]oard to rewrite

---

[2]After the Superior Court denied the licensing board's motion for a stay, the board sought a stay from a single justice of this court, who also denied a stay.

[3]The board submitted affidavits from its chairman and from a commissioner in support of its supplemental motion.

its findings." The judge denied the supplemental motion to correct the record and the motion to remand the case to the board or to reinstate the board's decision.

2. *Status of appeal.* The licensing board filed its notice of appeal on September 9, 1997, from the judgment entered in the Superior Court, after the board's motion for reconsideration had been denied. On November 24, 1997, the board filed a supplemental motion to correct the record.[4] In support of the supplemental *motion*, the board filed a *memorandum* in which it asked the court to remand the matter to the board "for clarification of the [b]oard's findings" and, in the alternative, to "hold that the decision of the [board] was not in error, nor was it arbitrary or capricious, and order the decision of the [b]oard denying the application for an all-alcoholic beverages license reinstated."

In terms of the relief requested, the board's memorandum sounds as if made in support of a motion under Mass.R.Civ.P. 59(e), 365 Mass. 828 (1974). Were that the nature of the motion of November 24, 1997, the notice of appeal earlier filed would be of no effect; i.e., it would have self-destructed. Mass.R.A.P. 4(a), 393 Mass. 1240 (1985). *Anthony* v. *Anthony*, 21 Mass. App. Ct. 299, 300-303 (1985). This appeal, in consequence, would be dismissed. *Blackburn* v. *Blackburn*, 22 Mass. App. Ct. 633, 634-635 (1986). Looking back at the underlying motion, however, it is limited to asking, under Mass.R.A.P. 8(e), 378 Mass. 934 (1979), for correction of the record going up on appeal. The relief requested in the supporting memorandum is without foundation in the underlying motion, and the board's appeal, therefore, is properly before us.

3. *The judgment to issue the license.* A complaint in the nature of certiorari (G. L. c. 249, § 4) was, in the absence of a path prescribed by statute, the appropriate avenue of review from a discretionary decision of a local licensing authority. *Bermant* v. *Selectmen of Belchertown*, 425 Mass. 400, 404 (1997). *Newbury Junior College* v. *Brookline*, 19 Mass. App. Ct. 197, 201 (1985). *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 297 (1985).[5] The statute

---

[4]That motion superseded an earlier motion to correct the record filed on November 12, 1997.

[5]Hungry I had exhausted its administrative remedies upon the issuance of

authorizing the issuance of liquor licenses speaks in terms of serving

> "the public need and in such a manner as to protect the common good and, to that end, to provide, in the opinion of the licensing authorities, an adequate number of places at which the public may obtain, in the manner and for the kind of use indicated, the different sorts of beverages for the sale of which provision is made."

G. L. c. 138, § 23, as amended by St. 1965, c. 399.

Need, in the literal sense of requirement, is not what the statute is about. Rather, the test includes an assessment of public want and the appropriateness of a liquor license at a particular location. For example, one might hesitate to authorize a license for a bar across the street from a public school. *Connolly* v. *Alcoholic Bevs. Control Commn.,* 334 Mass. 613, 617-618 (1956). Consideration of the number of existing dispensaries in a locality is a proper concern, *Victoria, Inc.* v. *Alcoholic Bevs. Control Commn.,* 33 Mass. App. Ct. 507, 514 (1992), as are the views of the inhabitants of the locality in which a license is sought. *Beacon Hill Civic Assn.* v. *Ristorante Toscano, Inc.,* 422 Mass. 318, 322 n.4 (1996). In making its discretionary determination, a licensing authority may take into account a wide range of factors — such as traffic, noise, size, the sort of operation that carries the license, and the reputation of the applicant. See *Connolly* v. *Alcoholic Bevs. Control Commn., supra; Great Atl. & Pac. Tea Co.* v. *Board of License Commrs. of Springfield,* 387 Mass. 833, 837 (1983); *Beacon Hill Civic Assn.* v. *Ristorante Toscano, Inc., supra; Hub Nautical Supply Co.* v. *Alcoholic Bevs. Control Commn.,* 11 Mass. App. Ct. 770, 772-774 (1981). In the case of liquor licenses, town and city boards may exercise judgment about public convenience and public good that is very broad, but it is not untrammeled. *Newbury Junior College* v. *Brookline,* 19 Mass. App. Ct. at 202. When reviewing the action of the local liquor licensing authority, we do not make an appraisal of the evidence; rather we examine the record for errors of law or abuse of discretion that add up to arbitrary and capricious decision-making. *Great Atl. & Pac. Tea Co.* v. *Board of License Commrs. of Springfield, supra* at 837-

---

the board's second rejection. See *Largess* v. *Nore's, Inc.,* 341 Mass. 438, 442 (1960).

838. *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph,* 19 Mass. App. Ct. at 300.

In its first decision, i.e., before the remand from the ABCC, the licensing board's subsidiary findings emphasized the concern of the Beacon Hill community that granting the application to Hungry I "would set off a rush of additional applications by restaurants currently holding beer and wine licenses." To grant a license in the face of strong community opposition, the board added, "would violate the spirit of the public need clause of the Liquor Control Act." Admonished by the ABCC that concern about action on future license applications was not a valid reason to deny the license application at hand, the board shifted its focus in the findings that supported the decision made after remand from the ABCC. In that second set of findings, the central one stated that there were already four all-alcoholic beverages licenses on Charles Street.[6] More licenses than four, the board stated in its finding 6, would "tend to have a destabilizing effect on the sale of alcoholic beverages in the area."

As spelled out in our summary of the facts, that assumption was contradicted by the record. There were not four licensees on Charles Street, but two. If four all-alcoholic beverages licensees constituted saturation, then the relevant locality was fifty percent short of saturation. As to the applicant, the board had acknowledged in its finding 5 "that the licensee currently runs a first class restaurant." There was now no evidentiary support for the facts on which the board had pitched its decision, and that decision was consequently arbitrary and capricious. *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 350 Mass. 712, 720 (1966). *Howe* v. *Health Facilities Appeals Bd.,* 20 Mass. App. Ct. 531, 537 n.6 (1985). Cf. *Massachusetts Elec. Co.* v. *Department of Pub. Util.,* 376 Mass. 294, 312 (1978). The opposition of the neighborhood, albeit an important factor for a licensing board to consider, does not convert the exercise of a licensing board's adjudicatory function into a plebiscite. At a minimum, the licensing board, by the terms of G. L. c. 138, § 23, fourth par., is obliged to state the

---

[6]The board incorporated in its second set of findings the findings it had made in connection with the first decision. That first set of findings consisted largely of recital of the evidence, e.g., who appeared before the board and what they said, rather than the board's findings.

reasons for its decision, for example that, on the basis of the opposition, the board had become persuaded that the applicant was unworthy or that articulable harm would follow from the grant of the license, such as noise, traffic, or rowdiness. *Olde Towne Liquor Store, Inc.* v. *Alcohol Bevs. Control Commn.*, 372 Mass. 152, 156 (1977). Here, the board thought well of the applicant and did not find, because on the record it could not, that the nature of Hungry I's operation would be altered if it held a more expansive license. Contrast *Dixie's Bar, Inc.* v. *Boston Lic. Bd.*, 357 Mass. 699, 702 (1970), written before G. L. c. 138, § 23, required licensing boards to state reasons for denying an application for a liquor license.[7] The judge was right in concluding that the board's decision was grounded in error, and, therefore, arbitrary and capricious. That conclusion was reinforced by the changing grounds for the board's decision, on which we elaborate in the next paragraph.

It remains to consider whether the judge was correct in ordering the board to issue the all-alcoholic beverages license to Hungry I or whether he should have remanded the case to the board. There had already been one trip to the ABCC and back to the board. The basis of decision had continued to shift: the neighborhood was strongly opposed; more than four licenses were too many; the board did not mean to stipulate that there were only two licenses on Charles Street, there were three; on further thought there were five, although two of those were in different neighborhoods. The board attempted to rewrite the record after judgment and even then shifted the factual basis for so doing: e.g., we did not mean Charles Street, we meant the Charles Street area. On the basis of the pattern of the proceedings before the licensing board, the Superior Court judge could reasonably apprehend that considerations other than rational analysis were driving the licensing board's decision-making, and that justice would not be served by further remand. *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 512, 520 (1976). *Newbury Junior College* v. *Brookline*, 19 Mass. App. Ct. at 208.

*Judgment affirmed.*

---

[7] That requirement was inserted by St. 1971, c. 260, § 2.