NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-773

COFFEESHOP, LLC[1]

vs.

ALCOHOLIC BEVERAGES CONTROL COMMISSION & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, formerly a Cambridge wine bar owned by Kimberly Courtney and Xavier Dietrich (owners), appeals from a Superior Court judgment affirming the decision of the alcoholic beverages control commission (ABCC or commission) to uphold a three-day suspension of the plaintiff's liquor license. Because the commission's decision was premised on error of law, we reverse.

Background. "We summarize the facts as found by the commission." Craft Beer Guild, LLC v. Alcoholic Beverages Control Comm'n, 481 Mass. 506, 509 (2019).

At 7:10 P.M. on Saturday, September 29, 2018, members of the Cambridge police and fire departments arrived at the

---

[1] Doing business as UpperWest.
[2] Cambridge Board of License Commissioners, intervener.

plaintiff's business for an enforcement matter regarding its use of candles. After observing five to ten lighted votive candles in glass on the bar and tables, the officials spoke with Courtney and Dietrich, who each recorded most of the interaction.

The officials instructed Courtney and Dietrich to extinguish the candles. Courtney refused and demanded that the men show her the text of the laws that the plaintiff's use of candles violated. The officials attempted to read aloud a law purportedly governing the use of the candles; Courtney interrupted them and said that the law in question was inapplicable, which as discussed below is correct.

As the conversation continued, the group moved outside. One of the officials then called a supervisor, who arrived at the premises at 7:35 P.M. While Courtney spoke to two of the officials, the other officials returned inside the premises to shut down the establishment. Once an official asked an employee to turn the music off, Courtney relented and extinguished the candles "under protest." After she extinguished the candles, Courtney asked the officials for their business cards or identification. As they were leaving, at approximately 7:53 P.M., Courtney stated "you will live to regret this."

On October 12, 2018, the Cambridge Licensing Commission (board) issued a notice of disciplinary hearing regarding the

2

incident, charging the plaintiff with (1) a fire safety violation, (2) hindering an investigation, (3) intimidating a witness and (4) threatening a public official.[3]  The board found the plaintiff in violation of all the charges against it and ultimately imposed a five-day suspension.  The plaintiff appealed.

After a hearing that spanned six days, featured testimony from nine witnesses, and included a total of seventy-five exhibits, the ABCC reversed the finding of a violation on the first charge.  It ruled that the board had charged and violated the plaintiff for "a section of law pertaining to the use of candles with portable cooking equipment," and it was "undisputed the candles at the [plaintiff's] establishment were not used for portable cooking equipment."  Accordingly, such a violation

---

[3] Specifically, the charges included:  count 1, failure to comply with Massachusetts Comprehensive Fire Safety Code, § 20.1.5.2.4(2), in violation of G. L. c. 148, § 28, G. L. c. 238, §§ 23 and 64, and the Rules and Regulations of the City of Cambridge Board of License Commissioners (2016), Rules 2.2-2.3, 2.5-2.6, 5.1-5.2, and 13.1; count 2, refusal to cooperate with agents of the fire department or hindering an investigation or enforcement of the law, in violation of G. L. c. 138, §§ 23, 63-64A and 64, and the Rules and Regulations of the City of Cambridge Board of License Commissioners (2016), Rules 2.2-2.3, 2.5-2.6, 5.1-5.2, 13.1, 13.3, and 13.5; count 3, intimidating a witness, specifically a public official, in violation of G. L. c. 268, § 13B; and count 4, threatening a public official, in violation of G. L. c. 275, §§ 2-4, G. L. c. 138, §§ 23 and 64, and the Rules and Regulations of the City of Cambridge Board of License Commissioners (2016), Rules 2.3, 2.5, 5.1-5.2, 13.1, and 13.5.

could not stand.  However, the ABCC affirmed the board's findings as to the violations of interfering with an investigation or enforcement of the law, intimidation of a witness, and threatening an official, ultimately upholding a three-day suspension as related to those violations.  A judge of the Superior Court affirmed.

Discussion.  1.  Mootness.  The defendants argue that the appeal is moot because the plaintiff failed to renew its liquor license in 2019 and also ceased to exist as an entity when it was administratively dissolved in 2022.  "[L]itigation is considered moot when the party who claimed to be aggrieved ceases to have a personal stake in its outcome."  Seney v. Morhy, 467 Mass. 58, 61 (2017), quoting Blake v. Massachusetts Parole Bd., 369 Mass. 701, 703 (1976).  The ABCC moved to dismiss this matter in the Superior Court partially on these grounds, which a different judge declined to do.  As that judge noted, the suspension may affect the owners in the future as the suspension against the plaintiff, a business owned by Courtney and Dietrich, may be considered and could negatively impact any application that Courtney or Dietrich file for a new license in the future.  See, e.g., Solimeno v. State Racing Comm'n, 400 Mass. 397, 400-401 (1987) (issue not moot where no relevant license suspension was still in effect because suspension could affect plaintiffs' future endeavors).

4

The defendants both essentially concede this point in acknowledging the owners' ongoing interest in these "collateral consequences."  As the ABCC writes in its brief, "[i]f Ms. Courtney were to form a new entity and apply for a new liquor license, the licensing authority could consider the suspension of the plaintiff's license."  See Ballarin, Inc. v. Licensing Bd. of Boston, 49 Mass. App. Ct. 506, 511 (2000) (application consideration encompasses "wide range of factors" including "the reputation of the applicant").  We decline the defendants' invitation to speculate that the owners will never again attempt to open a business like the one at issue here.

2.  Standard of review.  "The scope of review of the [ABCC]'s decision, both in the Superior Court and in [the appellate courts], is defined by G. L. c. 30A, § 14."  Howard Johnson Co. v. Alcoholic Beverages Control Comm'n, 24 Mass. App. Ct. 487, 490 (1987), quoting Burlington v. Labor Relations Comm'n, 390 Mass. 157, 161 (1983).  Accordingly, our "review of the ABCC's decision is limited to determining whether the decision was arbitrary and capricious or whether the ABCC made an error of law."  RK&E Corp. v. Alcoholic Beverages Control Comm'n, 97 Mass. App. Ct. 337, 340 (2020).  See Craft Beer Guild, LLC, 481 Mass. at 511-512.  See also G. L. c. 30A, § 14 (7) (g).  We "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as

5

to the discretionary authority conferred upon it."  G. L.
c. 30A, § 14 (7).  Additionally, "[w]e are not bound by the
Superior Court judge's conclusions . . . and must independently
review the commission's decision."  J.C. Hillary's v.
Massachusetts Comm'n Against Discrimination, 27 Mass. App. Ct.
204, 207 (1989).

3.  Hindering.  The hindering charge was premised on the
owners' discussion with the officials concerning the validity of
the enforcement action.[4]  The ABCC found that the substantial
evidence supported the assertion that Courtney specifically
hindered an "authorized agent of [the] local licensing
authorities in the performance of his duties," in violation of
G. L. c. 138, § 63A, and a corresponding local board rule.  The
ABCC noted that the officials were "undoubtedly hindered and
delayed [in their] investigation . . . into the use of candles"
for at least thirty-five minutes as Courtney and Dietrich
"argued" with them.

---

[4] The ABCC construed the actions as violations of G. L. c. 138,
§ 63A, which prohibits any licensee from "hinder[ing] or
delay[ing] any authorized investigator of the commission or any
investigator, inspector or any other authorized agent of local
licensing authorities in the performance of his duties."  The
corresponding board rule -- Rules and Regulations of the City of
Cambridge Board of License Commissioners (2016), Rule 13.5 --
prohibits the "refus[al] to cooperate with the License
Commission or its agents, hinder[ing] an investigation, or
fail[ure] to respond to a request for documents or information
from the License Commission or its agents."

While we "give due weight to the commission's experience, technical competence and specialized knowledge," our "deference does not suggest abdication" and we do not accord deference to "[a]n incorrect interpretation of a statute" (quotations and citations omitted). Craft Beer Guild, LLC, 481 Mass. at 512. Although the owners of the establishment challenged the officials' basis for the enforcement order, there is no evidence that they impeded any official's entry into the business or denied them requested information. See Lion Distributors, Inc. v. Alcoholic Beverages Control Comm'n, 15 Mass. App. Ct. 988, 989 (1983) (hindering investigation includes refusal of entry to conduct investigation as well as delay in providing information necessary to investigation). Compare Commonwealth v. Adams, 482 Mass. 514, 527-529 (2019) (obstructing police action requires physical act or threat of violence in order to avoid violating constitutional protections). In fact, during the exchange, the officials were not seeking any "information as may be required for the proper enforcement of" G. L. c. 138, § 63A; to the contrary, the owners were seeking information from the officials relating to the law that they claimed to be enforcing. The charge of hindering cannot be sustained.

4. Intimidation and threats. The charges of intimidation and threats were premised on Courtney's statement to the

officials, "you will live to regret this."[5]  The ABCC found that this constituted intimidation in the sense that it implied that Courtney would make a complaint against the officials, which in turn would cause them economic injury because it would jeopardize their professional careers.[6]  Likewise, the ABCC found that the statement also constituted a threat to commit a crime, specifically witness intimidation, in the sense that it implied that Courtney would retaliate against the officials for their enforcement action by filing a complaint, thereby causing them economic injury by jeopardizing their careers.[7]  The ABCC further noted that Courtney "followed through with her threat of retaliation against their employment by filing a complaint

---

[5] On the video, Courtney states, "[Y]ou guys are gonna regret behaving this way; this is not how this works."  Nevertheless, the ABCC credited the officials' testimony that Courtney said, "you will live to regret this," even though not found in any recording, because "[t]here is nothing to indicate that every word spoken was captured by the recordings."  We note, however, that nothing in the record indicates that witnesses heard Courtney express such a sentiment more than once and that the video recording conforms with the witness testimony as to the time when the officials heard Courtney make the statement.

[6] Specifically, the commission analyzed the actions as pertaining to G. L. c. 268, § 13B (criminal statute prohibiting witness intimidation), and Rules and Regulations of the City of Cambridge Board of License Commissioners (2016), Rule 5.1, which provides that "[n]o licensee shall permit any disorder, disturbance or illegality of any kind to take place in or on the licensed premises."

[7] The commission found the charges to be in violation of G. L. c. 275, § 2, and Rules and Regulations of the City of Cambridge Board of License Commissioners (2016), Rule 5.1.

8

against them in part arising out of their investigation . . . , which only gives credence to the fact she intended her statement to mean that she . . . [planned] to retaliate."

There is no dispute that Courtney's statement was taken as nothing other than an intention to file a complaint against the conduct of government officials.  No matter how aggressive the tone, the statement does not constitute a "true threat" which may deprive it of First Amendment protection.  See Van Liew v. Stansfield, 474 Mass. 31, 38-39 (2016) (insults, however loudly delivered, did not constitute true threats where, in context, they would not cause someone to fear imminent physical harm); Commonwealth v. Walters, 472 Mass. 680, 690-691 (2015) (true threats are statements in which speaker intends to relay a "serious expression of an intent to commit an act of unlawful violence to a particular individual").  An individual's right to complain against its government cannot be denied under a theory that the lawful complaint somehow threatens or intimidates a government official; the statement at issue here is a classic example of protected speech.  See Houston v. Hill, 482 U.S. 451, 461 (1987) ("First Amendment protects a significant amount of verbal criticism and challenge directed at" government officials); Van Liew, 474 Mass. at 38 ("remarks about a local public official constituted political speech and were at the core of the speech that the First Amendment" was intended to

9

protect).  Cf. <u>Buster</u> v. <u>George W. Moore, Inc.</u>, 438 Mass. 635, 648 (2003) (generally, threat to use lawful means to reach intended result not actionable under statute prohibiting "threats, intimidation, coercion").  The charges of intimidation and threats cannot be sustained.

The judgment is reversed. The matter is remanded to the Superior Court, where a new judgment shall enter reversing the decision of the ABCC.

<u>So ordered</u>.

By the Court (Meade, Singh & Smyth, JJ.[8]),

Assistant Clerk

Entered: March 4, 2024.

---

[8] The panelists are listed in order of seniority.

10