THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC. &
another[1] *vs.* BOARD OF LICENSE COMMISSIONERS
OF SPRINGFIELD.

Hampden. February 9, 1982. — March 9, 1982.

Present: HALE, C.J., CUTTER, & KASS, JJ.

*Alcoholic Liquors*, Transfer of location, Transfer of license.

A local licensing board erred in denying an application for transfer of a
liquor license and transfer of location a short distance to a site in the
same area where it appeared that the only interests protected by the
action of the board were those of other license holders against competi-
tion. [269-271]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 25, 1980.

The case was heard by *Smith*, J.

*Evan T. Lawson (Howard J. Wayne & Bert G. Scanna-
pieco* with him) for the plaintiffs.

*Harry P. Carroll*, Associate City Solicitor, for the defend-
ant.

HALE, C.J. The defendant board of license commission-
ers (board) denied the application of the plaintiff Cantwell
to transfer a license authorizing her to sell wines and malt
beverages for off-premises consumption (G. L. c. 138, § 15)
to the plaintiff The Great Atlantic & Pacific Tea Company,
Inc. (A & P), and to transfer its location. The stated reason
for the denial of the application is set out in the margin.[2] An
appeal was taken to the Alcoholic Beverages Control Com-

---

[1] Shirley Cantwell.

[2] "The majority of this Commission denied the requested transfer
because the public and the Liberty Heights area of Springfield are more
than adequately served by several Retail Package stores licensed by this
Commission."

mission (ABCC) which held a hearing and then remanded the matter to the board with the recommendation that the license be granted. Thereafter the board, on its own motion, held a new hearing and by a majority vote again denied the application. The reasons given for that second denial are also set out in the margin.[3] The plaintiffs then brought the present complaint for declaratory and other relief pursuant to the provisions of G. L. c. 231A. After hearing, a Superior Court judge made findings and rulings and entered a judgment declaring "[t]hat the decision of the city of Springfield was not arbitrary, nor capricious nor based on an error of law." We need not decide whether the action of the board was arbitrary or capricious for we hold that there was error of law in the denial of the application for the transfers.

There does not appear to be any dispute concerning the material facts. Cantwell, who did business under the name Emerald Package Store, for financial reasons had ceased doing business prior to the first hearing on her application and had not resumed business at the time of the second hearing.[4] The Emerald Package Store was located at 749 Liberty Street, in Springfield, in an area known as Hungry Hill.[5] The A & P to which the license would be transferred was about 600 feet away at 655 Liberty Street. Most of the opposition at the hearings before the board was directed to the point that there were enough beer and wine stores in the area in relation to the size of the neighborhood and that

---

[3] "On the basis of this re-hearing and the consideration of the public need and the protection of the common good as to an adequate number of places at which the public may obtain wine and malt beverages, it is the opinion of the Board of License Commissioners that the location to which the transfer is requested is presently served by an adequate number of places at which the public may obtain wine and malt beverages and therefore, the request for the transfer of location is denied by a two to one (2-1) margin."

[4] Counsel informed us at oral argument that the store has not since been reopened.

[5] The record indicates that the neighborhood is also known as Liberty Heights, the term used by the board (see note 2, *supra*).

other licensees in the area would be damaged by the competition which would result from the transfer. The recommendation of the ABCC that the license be granted was read at the second hearing. While the board was not bound to follow that recommendation, it was obliged to consider it along with the other information received at the hearings. See *Dixie's Bar, Inc.* v. *Boston Licensing Bd.*, 357 Mass. 699, 702 (1970). It cannot be said from this record that the board members failed to give at least token consideration to the recommendation.

In *Dixie's Bar* the court noted that, while there was then no statutory basis for requiring a statement of reasons with respect to proceedings under G. L. c. 138, § 23, a statement of reasons would be of assistance in determining whether the board had acted fairly and properly and that such reasons "tend to ensure administrative justice and to encourage public confidence in the administrative process." *Dixie's Bar, Inc.* v. *Boston Licensing Bd., supra* at 702. The Legislature then promptly enacted St. 1971, c. 260, § 2, amending § 23 to require local licensing authorities to disclose their reasons for any adverse action taken relative to alcoholic beverage licenses. We therefore look to the reasons stated by the board in this case to determine the propriety of the board's action. See Davis, Administrative Law § 14.29 (2d ed. 1980). As those reasons only relate to the location of the proposed transfer, we limit our discussion to that question.

The statutory standard governing action by local licensing boards is to be found in G. L. c. 138, § 23, first par.[6]

---

[6] The pertinent part of that paragraph states:

"The provisions for the issue of licenses and permits hereunder imply no intention to create rights generally for persons to engage or continue in the transaction of the business authorized by the licenses or permits respectively, but are enacted with a view only to serve the public need and in such a manner as to protect the common good and, to that end, to provide, in the opinion of the licensing authorities, an adequate number of places at which the public may obtain, in the manner and for the kind of use indicated, the different sorts of beverages for the sale of which provision is made."

This standard affords no protection for licensees against competition but provides only for the service of the *public* in a way to protect the *common* good by making provision for an adequate number of places where members of the public may obtain desired beverages.[7] In the circumstances of this case the denial of the application for transfer does nothing to serve the public or protect the common good in the manner contemplated by § 23.

We note first that the record before us does not indicate that any action has been taken by the board to cancel the Cantwell license for failure to conduct business on the licensed premises. See G. L. c. 138, § 77. Had such action been taken and the license canceled, or had the license sought to be transferred been from an area of the city outside Hungry Hill, there would be a rational basis for the board's stated reasons for its action. In other words, it would be proper for the board to deny the transfer of a license into an area already adequately served. Here, however, we have an outstanding license to sell beer and wine in a store located in the Hungry Hill area which is sought to be transferred but a short distance to a site in the same area. The allowance of the application for transfer would thus not result in any increase in the number of outstanding off-premises licenses in the area. The only interests protected by the action of the board in this case are those of other license holders against competition from a potentially active licensee. It would seem that such competition would serve rather than militate against the common good. We hold that the board's action was based on an erroneous conception of the law and that it was error for the judge to have upheld it.

---

[7] That standard does not clearly articulate a policy which permits a local licensing authority to apply anticompetitive considerations in the issuance or transfer of licenses within the limit of the total number of licenses which by statute may be issued by the municipality. A local board acting to limit competition in this area might run afoul of the Federal antitrust laws. See *Community Communications Co.* v. *Boulder*, 455 U.S. 40, 46-48 (1982).

The judgment is reversed. A new judgment is to enter declaring that the plaintiffs are entitled to the transfer of the license they seek and directing the board to approve the transfer of location and to issue a new license to the A & P at the premises located at 655 Liberty Street in Springfield.

*So ordered.*