Great Atlantic & Pac. Tea Co., Inc. *v.* Board of License Comm'rs of Springfield.

THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.
& another[1] *vs.* BOARD OF LICENSE COMMISSIONERS OF
SPRINGFIELD.

Hampden.  October 8, 1982. — January 5, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Alcoholic Liquors,* Transfer of location, Transfer of license, Local licens-
ing authority.

A decision of a local licensing board denying an application for transfer
of a license to sell beer and wine for off-premises consumption and
transfer of location a short distance to a site in the same area was
neither arbitrary or capricious nor based on an error of law where
there was evidence before the board that the holder of the license had
ceased doing business before the application for transfer was filed, that
the area had a large number of establishments selling beer and wine,
and that the public did not need an additional establishment.
[836-840]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 25, 1980.

The case was heard by *Smith,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Evan T. Lawson (Bert G. Scannapieco* with him) for the
plaintiffs.

*Harry P. Carroll,* Associate City Solicitor, for the defend-
ant.

NOLAN, J.  The board of license commissioners of the city
of Springfield (commissioners) denied an application by
Shirley Cantwell and The Great Atlantic & Pacific Tea
Company, Inc. (A & P), for a transfer of an off-premises beer
and wine license.  After a hearing, a Superior Court judge

---

[1] Shirley Cantwell.

made findings and rulings and entered a judgment declaring that the action of the commissioners was not arbitrary, nor capricious, nor based on an error of law. We affirm that judgment.

Noting that a trial judge's findings of fact will not be set aside unless they are clearly erroneous, Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), we summarize the facts as found by the judge. On February 20, 1980, the plaintiffs applied to the commissioners for permission to transfer Cantwell's off-premises beer and wine license to the A & P, and to transfer the location of that license from Cantwell's package store (the Emerald Package Store) at 749 Liberty Street, Springfield, to the A & P supermarket at 655 Liberty Street. The distance between the two locations is approximately 600 feet. Cantwell's package store had ceased doing business before February 20, 1980. The commissioners held a hearing and heard statements from proponents of, and opponents to, the transfer.[2] At the conclusion of the hearing, the three-person board voted against the transfer by a margin of 2 to 1.[3] Cantwell appealed the decision to the Alcoholic Beverages Control Commission (ABCC), which remanded the case to the commissioners with a recommendation that the license be granted.[4]

---

[2] The proponents consisted of lawyers for the A & P and the Emerald Package Store, representatives of the A & P, and at least one private citizen. In addition, a petition in favor of the transfer, consisting of over 1,500 signatures of persons not necessarily residing in the neighborhood, was introduced. The opponents to the transfer consisted of a representative of the neighborhood council, a pastor of a neighborhood church, and persons representing nearby package stores.

[3] Commissioners Chernock and Brennan voted against the transfer; Commissioner Blair voted for the transfer. The reason given by the commissioners is as follows: "[T]he public and the Liberty Heights area of Springfield are more than adequately served by several Retail Package stores licensed by this Commission."

[4] See generally *Largess* v. *Nore's, Inc.*, 341 Mass. 438 (1960) (ABCC is powerless to act on license application in manner contrary to decision of local authorities except to recommend to local board). The ABCC is an agency of the Commonwealth. G. L. c. 6, § 43.

387 Mass. 833                                       835

Great Atlantic & Pac. Tea Co., Inc. *v*. Board of License Comm'rs of Springfield.

Subsequently, the commissioners held a second hearing at which the same proponents of the transfer spoke before the licensing board. The pastor who spoke at the first hearing did not voice his opposition at the second hearing. However, the Springfield city planning department submitted a letter[5] which stated that the transfer should be denied because the neighborhood where the proposed site was located was primarily residential and had an abundance of existing licensed stores to serve the area, and because the granting of an additional license in the area would compound the oversaturation problem.[6] At the close of the meeting, the commissioners did not vote on the application, but postponed their decision for three or four days. According to Commissioner Blair, Commissioner Chernock indicated that he wanted to talk to "the man upstairs" before making a decision. Although there was some question as to whether the statement referred to the mayor of Springfield, the judge found, upon the testimony of Chernock, that the phrase, "the man upstairs," referred to God.[7]

Four or five days after the hearing, the secretary of the licensing board took a telephone poll of the commissioners. This poll indicated that the commissioners voted against the transfer by a vote of 2 to 1.[8] A notice was sent to the parties stating that the commissioners voted against the transfer because, "[o]n the basis of this re-hearing and the consideration of the public need and the protection of the common

---

[5] The judge found that a regulation of the commissioners mandated the submission of such a letter by the planning department.

[6] The judge found that the planning department "was plainly wrong" in this regard, because the transfer does not add a new license but, rather, replaces an existing license. While we acknowledge that the judge was technically correct, as we discuss *infra*, we perceive the transfer at issue in this case as different in effect from other transfers, in that the transfer to the A & P would result in an additional operating establishment for the purchase of beer and wine.

[7] The judge found that the commissioners knew of the mayor's opposition to the transfer.

[8] Commissioners Chernock and Brennan again voted against the transfer. Commissioner Blair voted in favor of the transfer.

good as to an adequate number of places at which the public may obtain wine and malt beverages, it is the opinion of the Board of License Commissioners that the location to which the transfer is requested is presently served by an adequate number of places at which the public may obtain wine and malt beverages." The instant action followed, and the case was heard before a judge.

The judge concluded that the commissioners' decision was not arbitrary, capricious, or based on an error of law, and dismissed the complaint. However, the Appeals Court reversed, holding that the decision of the commissioners was based on "an erroneous conception of the law." *Great Atl. & Pac. Tea Co.* v. *License Comm'rs of Springfield,* 13 Mass. App. Ct. 268, 271 (1982). Further, the Appeals Court ordered the commissioners to approve the transfer of location and to issue a new license to the A & P for the latter's supermarket at 655 Liberty Street in Springfield. 13 Mass. App. Ct. at 272. We allowed the commissioners' application for further appellate review. We affirm the judgment of the Superior Court.

Under G. L. c. 138, § 23, eighth par., any liquor license may be transferred from one location to another with the permission of the local licensing authorities. The ninth paragraph of § 23 provides that a license held by an individual "may be transferred to any individual, partnership or corporation qualified to receive such a license in the first instance, if, in the opinion of the licensing authorities, such transfer is in the public interest." G. L. c. 138, § 23, ninth par., as appearing in St. 1943, c. 542, § 12. Under paragraph four of § 23, if a licensing board denies an application for a transfer of location or a transfer between persons, the board shall send a notice of its decision, stating the reasons therefor.

The first paragraph of § 23 sets the standard for the statutory scheme. It provides in part: "The provisions for the issue of licenses and permits hereunder imply no intention to create rights generally for persons to engage or continue in the transaction of the business authorized by the

licenses or permits respectively, but are enacted with a view only to serve the public need and in such a manner as to protect the common good and, to that end, to provide, in the opinion of the licensing authorities, an adequate number of places at which the public may obtain, in the manner and for the kind of use indicated, the different sorts of beverages for the sale of which provision is made." G. L. c. 138, § 23, first par., as amended through St. 1965, c. 399.

In *Connolly* v. *Alcoholic Beverages Control Comm'n,* 334 Mass. 613, 618 (1956), we recognized that the ABCC possesses specialized knowledge of the problems affecting alcoholic beverages regulations. Cf. *Marchesi* v. *Selectmen of Winchester,* 312 Mass. 28, 30 (1942) (licensing of bowling alleys is a matter with which local authorities are familiar). We now explicitly recognize the comparable degree of expertise possessed by local licensing authorities. In 1970, we set forth the standard to be applied by the courts on judicial review of a licensing board's decision. *Dixie's Bar, Inc.* v. *Boston Licensing Bd.,* 357 Mass. 699 (1970). We stated in *Dixie's Bar* that a transfer of a license location is a matter entrusted to the sound discretion of the local licensing authorities, within the statutory standards, *id.* at 702, and that we will not substitute our judgment for that of the local authorities if the local authorities' decision had sufficient basis, *id.* at 703. In that case, we held that the record did not disclose an error of law or any arbitrary or capricious action. Thus, under *Dixie's Bar,* the test is whether the licensing board's decision was based on an error of law or whether the board took arbitrary or capricious action.[9]

At the time of the *Dixie's Bar* case, the then current version of G. L. c. 138, § 23, did not require a licensing board

---

[9] See generally *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n,* 372 Mass. 152, 153 (1977) (G. L. c. 30A, § 14, requires a court to apply *substantial evidence test* on judicial review of ABCC's decision to affirm suspension of liquor license); *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.,* 380 Mass. 919, 924 (1980) (standard of review of local board's revocation of victuallers' license is *substantial evidence test*). The substantial evidence test imports a higher degree of judicial scrutiny than the *Dixie's Bar* test.

to disclose the reasons for its decision. However, in 1971, the Legislature amended § 23 to require licensing boards to state their reasons. St. 1971, c. 260, § 2. In light of this, we hold that the proper standard to be applied in reviewing license transfer cases is whether the court finds, giving reasonable deference to the discretion of the local authorities, that the reasons given by the local authorities are based on an error of law or are reflective of arbitrary or capricious action. We reiterate the principle that we will not substitute our judgment for that of the local authorities.

In the case before us, the commissioners denied A & P's and Cantwell's application for a transfer of a license from Cantwell to the A & P. Prior to February 20, 1980, Cantwell closed the doors of her store, the Emerald Package Store, and thus, that store ceased to do business. As a result, at the time of both the first hearing and the second hearing before the commissioners, the license issued to Cantwell did not represent an operational source of alcoholic beverages for the community. The commissioners stated that their reason for denying the transfer was that the area in question was "presently served by an adequate number of places."

The Appeals Court noted that, as there was an outstanding license to sell beer and wine at the Emerald Package Store, a transfer of that license to a location 600 feet away would not "result in any increase in the number of outstanding off-premises licenses in the area." 13 Mass. App. Ct. at 271. Therefore, the Appeals Court concluded that the stated reason was inconsistent with the facts. Protesting that the denial of the license transfer protected only other license holders against competition from the A & P, the Appeals Court held that the commissioners' decision was based on an error of law. *Id.*

We disagree. The commissioners stated that they denied the transfer because the area was presently served by an adequate number of establishments. Such a conclusion is both reasonable and proper. There was evidence before the judge from which he could have inferred that the commis-

sioners' stated reason was not their actual reason. How-
ever, there was also evidence from which he could have in-
ferred that the commissioners' stated reason was, in fact,
the actual reason. The judge was not obliged to find that
the commissioners' stated reason was not their actual
reason. His finding as to the commissioners' reason is sup-
ported by the evidence; therefore, we will not disturb it.
*Bridges* v. *Hart,* 302 Mass. 239, 242 (1939). It is sufficient
for us to state that, as the Cantwell package store was not
operating at the time of either hearing, it was not erroneous
for the commissioners to conclude that a transfer of that
dormant license to the A & P would not be in the public in-
terest because there was an adequate number of establish-
ments in the area at which the public could obtain beer and
wine. See *Liggett Drug Co.* v. *License Comm'rs of N.
Adams,* 296 Mass. 41, 53 (1936) (statute, "according to its
true interpretation," authorizes licensing authority to
decline to grant license on ground "that there already were
enough common victuallers in the city").[10] Though the
present case concerns the transfer as distinguished from the
initial issuance or renewal of a license, we think the com-
missioners have a right to consider the existing facilities even
in transfer cases.

Moreover, our examination of the record compels the
conclusion that the commissioners' decision was not ar-
bitrary or capricious. There was evidence before the com-
missioners that the area had a large number of establish-
ments selling beer and wine, and that the public did not
need an additional establishment. The commissioners
stated the reason for their decision. There is nothing in the
record to indicate that the decision was whimsical or not
based on logical analysis. On the record, we can only con-

[10] We find nothing in the statutory schemes concerning alcoholic
beverages licenses and common victuallers' licenses to cause us to discount
the applicability of the *Liggett Drug* opinion to the case before us. Com-
pare G. L. c. 138 (alcoholic beverages licenses), with G. L. c. 140,
§§ 2-21 (common victuallers' licenses).

clude that the decision was founded on reasoned judgment, and was not arbitrary or capricious.[11]

Finally, A & P and Cantwell argue that the commissioners' decision was based on anti-competitive motivation, and thus it must be set aside because it violates Federal antitrust laws. There was sufficient evidence on which the judge could find that the commissioners' decision was based on their determination that the public need was already being adequately served by the operating establishments in the area. Such a finding by the judge, being supported by the evidence, will not be disturbed. *Bridges* v. *Hart, supra.*[12]

For all of the foregoing reasons, we affirm the judgment of the Superior Court.[13]

*So ordered.*

---

[11] The dictum in the opinion of the Appeals Court recognizing the right of the commissioners to terminate the license under G. L. c. 138, § 77, for failure to conduct business on the licensed premises but denying the commissioners the right to disapprove a transfer of a license from one location within the neighborhood to another location within the neighborhood, is unpersuasive. *Great Atl. & Pac. Tea Co.* v. *License Comm'rs of Springfield*, 13 Mass. App. Ct. 268, 271 (1982).

[12] The issue of an alleged violation of the Open Meeting Law, G. L. c. 39, §§ 23A-23B, is not before us, becuase the complaint in this case was not filed until twenty-five days after the contested action was made public. See G. L. c. 39, § 23B (complaint must be filed within twenty-one days of date of when action is made public).

[13] Our decision renders it unnecessary for us to examine the propriety of the Appeals Court's order directing the commissioners to approve the transfer and issue a license to the A & P. See generally *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 512, 520 (1976) (court may direct municipal authority to take specified action only in narrow circumstances).