Lauriat, J.
The plaintiff, Shamar, Ltd. d/b/a Trinity (“Shamar”), instituted this action pursuant to G.L.c. 249, §4, seeking to reverse a decision in which the defendant, Licensing Board for the City of Boston (the “Board”), upon remand from the Alcohol Beverages Control Commission (“ABCC’j, reinstated its original *752 decision to suspend Shamar’s alcohol beverages license for two days. Shamar has now moved, pursuant to Mass.R.Civ.P 12(c), for judgment on the pleadings, asserting that the Board arbitrarily reinstated the suspension. After hearing, and upon consideration of the oral arguments and memoranda submitted by the parties, the plaintiffs motion is allowed.
BACKGROUND
A review of the record reveals the following. Shamar holds licenses from the City of Boston as a common victualler, and for seven-day sale of all alcoholic beverages. On September 10, 1997, the Board notified Shamar that it was going to hold a hearing to determine whether Shamar violated certain provisions of its license as a result of a disturbance that allegedly occurred on Shamar’s premises on August 2, 1997.
The Board held a hearing on October 28, 1997. At that hearing, the Board found that on August 2, 1997, William Gonsales[1] (“Gonsales") was inside Shamar with his girlfriend and some friends. When returning from the men’s room, Gonsales accidently bumped into another male patron. Words were exchanged and the men pushed each other. A bouncer then separated the two men. Minutes later, a large scuffle broke out, and two other patrons held Gonsales while the patron he had previously bumped stabbed him. Immediately after Gonsales was stabbed, his girlfriend, Jamie Convoy (“Convoy”), helped him upstairs and outside to the sidewalk. Both Gonsales and Convoy stated that after Gonsales was stabbed and bleeding, bouncers/employees at Shamar refused to help. Officer Charles Byrne (“Byrne”), a Boston Police Officer who was performing a police detail at Shamar the night of the incident stated that, at the time Gonsales was exiting the club, Byrne observed Gonsales holding his intestines in his hands. Detective Robert Tulley stated that when he arrived, Gonsales was lying on the sidewalk and bleeding from multiple stab wounds. At that time, two off-duty firefighters who had been in Shamar were administering first aid to Gonsales until the ambulance arrived. The record indicates that Officer Earle Perkins, another police detail officer assigned to the club, and Sean Driscoll, the president of Shamar, also testified.
After the hearing, the Board determined that the disturbance having resulted in serious injury to Gonsales and having occurred on the licensee’s premises, the licencee violated G.L.c. 138, §64, (suspension and revocation of license), and Rules 1.08(a),[2] 1.08(e)[3] and 1.13(b)[4] of the General Rules of the Licensing Board for the City of Boston. Essentially, the Board found that Shamar violated the Board’s rules because it became a focal point for police attention and the licensee failed to assist an injured person. As a result, the Board suspended Shamar’s license for a period of two days.
Shamar filed a Notice of Appeal of the Board’s decision with the ABCC, pursuant to G.L.c. 138, §67. On September 30, 1998, a hearing was held before the ABCC. That hearing included testimony from several of the same witnesses that testified at the Board hearing. However, the record before this court indicates that the testimony of Gonsales and Convoy before the ABCC is inconsistent with their testimony before the Board. For example, based on his testimony before the Board, the Board found that the patron Gonsales bumped into outside the men’s room was the same patron who stabbed him. However, Gonsales’s testimony before the ABCC indicates that he had no recollection of several of the events that night and that he could not say whether the man he bumped into previously was the same person who stabbed him. Furthermore, Gonsales testified that he did not think the first altercation with the other patron would lead to an escalation of violence. Additionally, Convoy’s testimony before the Board conflicted with the testimony of several of the police officers who testified before the ABCC.
The ABCC also heard testimony from witnesses who did not testify before the Board. For example, Stephen Kilkelly, a Shamar employee present on the night of the incident, testified before the ABCC that he summoned Officer Perkins for help and that he assisted in breaking up one of the several scuffles that erupted at the time of the stabbing. Kilkelly also stated that he observed Gonsales after he was stabbed, that he, Kilkelly, did not refuse to help anyone, and that he cleared a path for Gonsales to make his way outside the club. Joseph Holland, a Shamar bartender also stated that he took part in breaking up fights and had police alerted to possible altercations. A great deal of the testimony by the Shamar employees and Driscoll focused on the fact that the employees of Shamar wear shirts with the word “Trinity” printed on the back. These same shirts are sold to customers.
Based on the evidence before it, the ABCC found that Shamar could not have foreseen that a fight would break out and that a stabbing would occur. Unlike the Board, the ABCC found that the licensee acted in a responsible manner and assisted the victim as much as possible. As a result, the ABCC found that the evidence did not support the findings of the alleged violations, and remanded the matter to the Board.[5]
On October 22, 1998, upon remand, and without notice to Shamar or an opportunity for it to be heard, and without any further evidence, or any review of the evidence presented to the ABCC, the Board voted to reinstate its original decision and suspended Shamar’s license for a two-day period. Shamar then filed its complaint for certiorari in this court.
DISCUSSION
I.
An analysis of the structure of the statute and an examination of the steps taken by the parties involved are necessary to determine whether the Board committed an error of law or acted arbitrarily and capri *753 ciously. G.L.c. 249, §4. The procedural posture of this case indicates that Shamar first appealed the Board’s decision to the ABCC, pursuant to G.L.c. 138, §67. The statute provides that any person who is aggrieved by the actions of a local licensing authority in modifying, suspending, canceling, revoking, or declaring forfeited a license may appeal to the ABCC. The ABCC must give due notice to all interested parties and hold a hearing. If the ABCC approves the action of the Board, it must issue notice to that effect.[6] However, if the ABCC disapproves of the Board’s actions, it must issue a decision in writing advising the Board of the reasons for disapproval, and then “remand the matter to said local authorities for further action.” G.L.c. 138, §67 (emphasis added).
The record in the present case indicates that there was no “further action” after the ABCC remanded the matter back to the Board; the Board simply voted to reinstate its original decision without notice to Shamar, without holding any type of hearing, without considering any further evidence or conducting any further review, and without providing a statement of reasons for its decision.
In order to understand the implications of the Board’s determination to reinstate its original decision, it is necessary to describe the full scope of G.L.c. 138, §67. Although the statute does allow for a re-appeal to ABCC if the Board modifies, cancels, revokes, or declares forfeited a license, the statute specifically excludes a suspension as a basis for re-appeal to the ABCC.[7] See Board of Selectman of Clinton v. ABCC, 17 Mass.App.Ct. 905, 906-07 (1983) (G.L.c. 138, §67 does not permit re-appeal to ABCC from suspension of liquor license); Largess v. Nore’s Inc., 341 Mass. 438, 442 (1960) (in case involving transfer of alcohol license, after remand to the local licensing authority, ABCC had exhausted its power and had no jurisdiction to hear re-appeal). The only authority provided to the ABCC in the case of a disapproved license suspension is the power to recommend to the Board what action to take. See Board of Selectman of Clinton, 17 Mass.App.Ct. at 906-07.[8] The Board is not bound to follow the recommendation of the ABCC. See Boston Licensing Board v. Alcoholic Beverages Control Commission, 367 Mass. 788, 795 (1975); Dixie’s Bar, Inc. v. Boston Licensing Board, 357 Mass. 699, 702-03 (1970) (in case involving the transfer of a liquor license under G.L.c. 138, §23, licensing board was not bound to follow the recommendation of the ABCC).
By not allowing the re-appeal process and by implying that the decision of the ABCC is merely a recommendation, the statute imparts broad discretion to the licensing board as the final authority on license suspension. In the present case, the Board asserts that, based on the decisions cited above and on the absence of language in G.L.c. 138, §67, regarding the Board’s function on remand, it is entitled to reinstate its original decision.
However, even recognizing the Board’s broad discretion, and the absence of language in G.L.c. 138, §67 regarding what is required of the Board on remand, the court concludes that the Board does not have statutory authority to impose arbitrarily its license suspension decision on a licensee. The standard of review in an action in the nature of certiorari is to correct errors of law apparent on the record which adversely affect material rights. MacHenry v. Civil Service Com’n., 40 Mass.App.Ct. 632, 634, review denied, 423 Mass. 1106 (1996). “A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court.” G.L.c. 249, §4. More specifically, the standard applied when reviewing a transfer of license case, which is not subject to judicial review under G.L.c. 30A, is whether the licencing board’s decision was based on an error of law or whether the board took arbitrary or capricious action." Great Atlantic & Pacific Tea Co. v. Board of License Commissioners of Springfield, 387 Mass. 833, 837 (1983); Dixie’s Bar, 357 Mass. at 702-03. Because Board decisions regarding the suspension of licenses are not subject to final review by the ABCC, the standard of review to be applied by this court is whether the Board’s decision is based on an error of law or reflective of arbitrary or capricious action. Great Atlantic & Pacfic Tea Co., 387 Mass. at 838.
An examination of the record compels the conclusion that the Board’s decision to reinstate its original decision without notice to Shamar, or an opportunity for it to be heard concerning the Board’s decision, and without consideration of any further evidence, or review of the evidence or record presented to the ABCC, and without a statement of reasons for the Board’s decision, was arbitrary and capricious. Cf. Great Atlantic & Pacific Tea Co., 387 Mass. at 839-40 (local licensing authority’s denial of application for transfer of license after the ABCC recommended a different result was not arbitrary and capricious where the local authority stated reasons for its decision, supported it by evidence, and founded it on reasoned judgment). The record in this case indicates that the witnesses who appeared before the Board gave conflicting testimony when appearing at the hearing before the ABCC. Furthermore, there were several witnesses that appeared at the ABCC hearing, who did not testily before the Board. Based on the testimony before the ABCC, there is evidence that Shamar acted reasonably and did attempt to help the victim. The Board’s one paragraph decision reinstating its original decision, without a statement of reasons, leaves no record upon which this court may determine whether the Board even considered or reviewed the evidence presented to the ABCC. Unlike the decision of the local authority Great Atlantic, there is nothing in the present record to indicate that the Board’s decision was not “whimsi *754 cal” or was based on “logical analysis.” See Great Atlantic & Pacific Tea Co., 387 Mass. at 839. Therefore, this court concludes that the Board’s decision was not based on reasoned judgment and was arbitrary and capricious. Id. at 840.
The Board’s contention that according to the Clinton case, it is not required to give notice and have a hearing upon remand is not persuasive. The facts presented in both Dixie’s Bar and Great Atlantic indicate that upon remand from the ABCC, the local licensing authority held a second full hearing before making its final decision. See Dixie’s Bar, 357 Mass. at 701; Great Atlantic, 387 Mass. at 835.
II.
Finally, this court must note its concern with the Board’s apparent disregard of the substantive and procedural due process rights of the licensee. Although the court has judicial review of a decision of the ABCC under G.L.c. 30A, §14, it does not have the same scope of judicial review over the Board. Dixie’s Bar, 357 Mass. at 702. Under G.L.c. 30A, the court can review a final decision of a state administrative agency, and can consider seven different factors in determining the propriety or impropriety of the agency’s decision. G.L.c. 30A, §14(7). Specifically, the court can determine whether the substantial rights of any party are prejudiced because an agency’s decision is (a) in violation of constitutional provisions; or (b) in excess of the statutory authority or jurisdiction of the agency; or (c) based upon an error of law; or (d) made upon unlawful procedure; or (e) unsupported by substantial evidence; or (f) unwarranted by the facts found by the court on the record as submitted ... in those instances where the court is constitutionally required to make independent findings of fact; or (g) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. G.L.c. 30A, §14(7)(a-g).
In contrast, because the Board is not a state agency, this court’s review of the Board’s final decision on a writ for certiorari is more narrowly circumscribed. See Great Atlantic & Pacific Tea Co., 387 Mass. at 837, n. 9 (after comparing the standards of review required under G.L.c. 30A, §14, and review upon writ of certio-rari, “the substantial evidence test imports a higher degree of judicial scrutiny than the Dixie’s Bar test"). Ironically, the licensee may have a higher likelihood of success on judicial review if the ABCC approves the Board’s original decision. In such a case, the licensee can appeal directly to the Superior Court under G.L.c. 30A and subject the Board’s decision to a greater degree of judicial scrutiny. On the other hand, should the ABCC reverse the Board’s decision and remand the matter for further action by the Board, any further action by the Board inconsistent with the decision of the ABCC is subject to limited judicial review. Such a state of affairs is difficult to comprehend, let alone justify.
ORDER
For the foregoing reasons, the plaintiffs motion for judgment on the pleadings is ALLOWED, and the October 22, 1998, decision of the Licensing Board of City of Boston is VACATED.

The Board’s Findings and the ABCC's Decision list Gonsales as “Gonzalves" or “Gonzales.” However the transcripts of the Board hearing and the ABCC hearing indicate that the witness is “Gonsales."

“It shall be the obligation of licensees to ensure that a high degree of supervision is exercised over the conduct of the licensed establishment at all times. Each licensee will be held accountable for all violations that are related to the licensed premises to determine whether or not the licensee acted properly in the given circumstances.”

“When any noise, disturbance, misconduct, disorder, act or activity occurs in the licensed premises . . . , which in the judgment of the Board adversely affects the protection, health, welfare, safety, or repose of the residents of the area ... or results in the licensed premises becoming the focal point for police attention, . . . the licensee may be held in violation of the license and subject to proceedings for suspension, revocation, or modification of the license."

“Licensees shall call the police and an ambulance and take all other reasonable steps to assist patrons or persons who are injured in or on the licensed premises . . .”

The final paragraph of the ABCC's decision reads, “(t]he Commission finds that the evidence does not support the finding of a violation as charged and remands the matter back to the Local Board.” However, below the signatures of the Commissioners, the statement appears, “[ylou have the right to appeal this decision to the Superior Court under the provisions of chapter 30A of the Massachusetts General Laws within thirty days of receipt of this decision.” This statement was incorrectly added to the ABCC decision since a c. 30A appeal is only available if the ABCC approved of the decision of the Board. According to the facts of this case, the matter was properly remanded back to the Board.

If the ABCC approved the Board’s decision for suspension, then Shamar would be entitled to an appeal under G.L.c. 30A.

It is important to note that if the actions taken by the Board allowed for re-appeal to the ABCC, the ABCC’s decision after its second hearing would be final, and the licensee would have the option of a G.L.c. 30A appeal to the Superior Court.

Although the case law indicates that ABCC can only recommend the action to be taken by the Board on remand in a case involving license suspension, the court is not convinced that the ABCC’s appellate review is limited to a recommendation. In particular, the fifth paragraph G.L.c. 138, §67 provides, “if the local licensing authorities fail to suspend, revoke, cancel or declare forfeited a license or to perform any other disciplinary act when lawfully ordered so to do by the [ABCC] upon appeal or otherwise, . . . the [ABCC] may itself revoke such license of perform such act, with the same force and effect as if issued or performed by the local licencing authorities . . .’’In reading this statute in whole, when a licensee appeals to the ABCC a local licensing board’s decision to suspend its licence, this court interprets the statute to mean that the decision of the ABCC is final and subject to judicial review under G.L.c. 30A.