Agnes, A.J.
This matter came before the court on September 16, 2004, on the plaintiff INTMB, Inc.’s (INTMB) request for an injunction against the September 15, 2004 order of the Westborough Board of Selectmen (Board) suspending INTMB’s “All Alcoholic Innholder License” (liquor license) for a period of two *453 weeks.[2] “By definition, a preliminary injunction must be granted or denied after an abbreviated presentation of the facts and the law." Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). The findings of fact below are based on a hearing conducted September 16, 2004. For the following reasons, INTMB’s motion for a preliminary injunction against the Board’s order is granted, pending further appellate review by the Alcoholic Beverages Control Commission (ABCC).[3]
BACKGROUND
The parties agree to the essential facts set forth in INTMB’s complaint and the Board’s order, as follows.
On or about July 10, 2004, at approximately 7:37 p.m., Brian Donovan, Manager of the Wyndham Wes thorough Hotel (Wyndham), allowed the sale of alcoholic beverages to a person under the age of 21 in violation of G.L.c. 138, §34. Wyndham had been found in violation of its liquor license on one other occasion, in 2001. Prior to INTMB’s operation of the premises, Interstate, Inc. (Interstate) operated a Marriott hotel and adjoining bar on the same premises. Interstate had been found in violation of its liquor license twice. There is no legal relationship between the entities INTMB and Interstate — in fact, they are competitors.
The Westborough “Liquor License Suspension Guidelines” suggest a three-day suspension for a second violation of a liquor license. The Board, however, voted at a September 14, 2004 hearing of the matter to suspend INTMB’s liquor license for two weeks — the suggested penalty for a fourth violation. INTMB was heard at the hearing. In its order dated September 15, 2004, a copy of which has been filed with the court, the Board stated its grounds for the two-week suspension as “the nature of the offense, sale of alcoholic beverages to a person under the age of 21 in violation of [G.L.c. 138, §34], the server’s acknowledgement of the requirement to check identification and then failing to do so, and prior liquor license violations at that location.” INTMB has appealed Westborough’s suspension to the ABCC, pursuant to G.L.c. 138, §67. The Board denied INTMB’s request for a stay of the suspension pending resolution of the appeal by the ABCC. INTMB subsequently filed the present motion for a preliminary injunction against the Board’s order.
DISCUSSION
In deciding whether to grant a preliminary injunction, the court must determine whether the moving party has demonstrated a likelihood of success on the merits and whether it faces a substantial risk of irreparable harm. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 & n.11 (1980). “Irreparable harm” is “a loss of rights that cannot be vindicated should [the party] prevail after a full hearing on the merits.” Id. If the moving party has met this burden, the court must then balance the irreparable harm faced by the moving party against the harm an injunction would inflict upon the opposing party should they later prevail at a hearing on the merits. Id. at 617. “Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id.
In weighing the relative risks of irreparable harm to each party, however, such risks must be viewed in light of each party’s likelihood of success on the merits. Id. at 617 (noting that “what matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits”); see also Gately v. Commonwealth, 2 F.3d 1221, 1224-25 (1st Cir. 1993).
Furthermore, “in an appropriate case, the risk of harm to the public interest also may be considered.” Brookline v. Goldstein, 388 Mass. 443, 447 (1983); see also LeClair v. Town of Norwell, 430 Mass. 328, 337 (1999); Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984).
I. Likelihood of Success on the Merits
Although there is no Massachusetts caselaw directly on point, one ABCC decision is instructive. In Gravinese v. City of Everett, the ABCC stated, “[w]hen this Commission reviews an appeal, it is not to appraise the evidence, rather it is to examine the record for errors of law or abuses of discretion that add up to arbitrary and capricious [decisionmaking].” Gravinese v. City of Everett, Alcoholic Beverages Control Commission, Oct. 2, 2002 (adopting the standard of judicial review the courts apply to decisions of local liquor licensing authorities, as described in Great Atlantic & Pacific Tea Co. v. Board of License Commissioners of Springfield, 387 Mass. 833, 837-38 (1983)).[4] Accordingly, the ABCC will overturn a decision of a local licensing authority when it is found to be based on an error of law, an abuse of discretion, or otherwise arbitrary and capricious. Id.
Applying this standard of review, the ABCC suggested in Gravinese that when tailoring a penalty for violation of a liquor license, it is arbitrary and capricious to consider the violation history of past owners of the premises where the current owner is an entity legally distinct from the past owner. See Gravinese (“[T]o reason that this application [for a liquor license should] be denied due to previous problems of another licensee [who operated at the same premises] is an abuse of discretion and in this Commission’s opinion, arbitrary and capricious”).
It is this court’s opinion that the Gravinese decision was predicated on the fundamentally personal nature of a liquor license. See Jubinville v. Jubinville, 313 Mass. 103, 106 (1943) (“a liquor license once granted does not run with the business. It is a non transferable personal privilege”) (emphasis added).
Furthermore, this court also agrees with the ABCC in recognizing a fundamental concept of fairness em *454 bodied in the principal that past wrongs committed in a particular location ought not be imputed to future owners and operators of that space. Eliminating then the fact of past violations from the proper evidentiary basis upon which the Westborough licensing authority may predicate its penalty calculation, a two-week suspension for a second liquor license violation becomes arbitrary and capricious in light of Westborough’s own guidelines.[5] See, e.g., Ruci v. Client's Security Board, 53 Mass.App.Ct. 737, 740 (2002) (“where the factual premise on which an agency purports to exercise discretion is not supported by the record, its action is arbitrary and capricious and based upon an error of law, and cannot stand”) (citing Ballarin, Inc. v. Licensing Board of Boston, 49 Mass.App.Ct. 506, 511-12 (2000)).
Accordingly, INTMB has demonstrated a likelihood of success on appeal to the ABCC.
II. Risk of Irreparable Harm to the Parties and Public
INTMB argues in its complaint that “(The Wyndham Westborough Hotel] will be irreparably harmed and stands to lose substantial revenue and business unless this Court stays the suspension pending the resolution of the appeal. This Wyndham location’s very own financial viability will be irreparably imperiled.”
Considering the nature of a full-service hotel, and the pivotal economic importance ,of a liquor license in the daily operations of a full-service hotel, this court concludes that Wyndham does face a substantial risk of irreparable harm should its liquor license be suspended for two weeks. Such irreparable harm will take the form of immeasurable pecuniary loss resulting from loss of potential guests and breach of at least one contract, as well as the action that will likely flow therefrom.[6]
Furthermore, it can be expected that from these pecuniary losses will flow the loss of a certain amount of goodwill. It is this court’s opinion that loss of a company’s goodwill is inherently difficult to quantify in economic terms, and nearly impossible to restore once lost, thereby giving rise to irreparable harm. See e.g., Kroeger v. Stop & Shop Cos., 13 Mass.App.Ct. 310, 316, 322 (1982); Stone Legal Resources Group, Inc. v. Giebus, Civil No. 025136 (Super.Ct.Dec. 16, 2002) (Bumes, J.) (15 Mass. L. Rptr. 738, WL 914994 at *6).
III. Balancing the Equities
There is no risk of irreparable harm to Westborough or its citizens should this injunction be granted and the ABCC ultimately uphold the Board’s order — the deterrent effect of the penalty upon Wyndham and the alcohol-serving community will be essentially the same no matter when in time the penalty is imposed. The court is sensitive, however, to the substantial risk of harm to the public interest, should an arbitrarily harsh penalty be imposed during a scheduled wedding at the Wyndham hotel. Accordingly, the balance of the equities clearly tilts in favor of INTMB/Wyndham, and a preliminary injunction shall therefore be granted.

To run from September 15, 2004 through September 28, 2004.

 This matter was disposed of shortly after hearing arguments the morning of September 16, 2004. This written decision memorializes the court’s reasons for the Order previously entered on September 16, 2004, as follows:
Upon the complaint for injunctive relief and upon hearing oral argument from counsel for both parties, it is hereby ORDERED, that the order of the Board of Selectmen of the Town of Westborough dated September 15, 2004 directing a suspension of that certain All Alcoholic Innholder- License is stayed pending the disposition of plaintiffs appeal of said order to the Alcoholic Beverage [sic] Control Commission; and it is further ORDERED, that the stay pending appeal shall commence immediately; and it is further ORDERED, that the plaintiff shall be in possession of the All Alcoholic Innholder License, except for the period of suspension, if any, ordered by this court. (Agnes, J.) (Sept. 16, 2004).

Decisions of the ABCC are available from the Social Law Library, at: http://www.socialaw.com.

These guidelines are presumed valid by this court. See, e.g., Commonwealth v. Henry's Drywall Co., 366 Mass. 539, 544 (1974) (declaring “[i]t is not our function to consider the expediency of an [administrative] enactment or the wisdom of its provisions”).

At oral argument it was disclosed to the court by INTMB that a wedding party had contracted for Wyndham to perform reception services during the two-week suspension period imposed by the Board.